EDGAR W. CHARLES *vs.* CALEB COKER & BRO., JOHN M. DAVIS AND WIFE, AND OTHERS.

A trust to pay the income of the settled property to a married woman "for and during the joint lives of her and her husband, taking her receipt therefor," gives her a sole and separate estate in the income.

To creat e such an estate, technical words are not necessary. If a plain intention to exclude the husband appears, that is enough, and a declaration making the receipt of the wife a sufficient discharge, shows such intent.

Where income is to be paid to a married woman to her sole and separate use, and no restriction is imposed upon her use or disposition thereof, she is regarded, as to the use and disposition of such income, as a *feme sole,* and after it is paid to her, she may give it to her husband.

Where a married woman was entitled to the hire and labor of slaves to be paid to her, on her receipt, for her sole and separate use, and the slaves were in the possession of her husband, though he was not the trustee, and he, for a number of years, with her knowledge, and without complaint or objection on her part, paid the annual proceeds of the hire and labor of the slaves to C, in consideration of supplies annually advanced by C for the use of the family and the preservation of the trust estate: *held,* that C could not be compelled to account, for the benefit of the married woman, for the proceeds so received by him.

An indorsement by defendants on the *sub. ad res.*, that they accepted service thereof, admitted the truth of the statements of the bill, and consented to the prayer thereof, will not be regarded as an answer, nor have the effect of one.

J bargained for a tract of land, and received a bond for titles, which he afterwards transferred to C, as security for advances made and to be made. C having paid for the land, and taken a conveyance to himself, *held* that he could hold it only as security for any balance due him on the account for advances and money paid.

Where a judgment by confession is intended as additional or cumulative security, it will not discharge other securities for the same debt held by the plaintiff.

In February, 1861, C purchased from J. the husband, but not the trustee of the *cestui que trust*, certain slaves of the trust estate : *Held*, that C could not, after the general emancipation in 1865, treat the transaction as void and inoperative, because J had not title to the slaves, or right to sell them, but that he was liable to account for the benefit of the *cestui que trust* for the sum he had agreed to pay, with interest thereon.

BEFORE JOHNSON, Ch., AT DARLINGTON, FEBRUARY, 1868.

The facts upon which the appeal in this case was heard are stated in the Circuit decree, which is as follows :

JOHNSON, Ch. On the 10th day of December, 1842, John N. Williams executed a deed, of which the following is a copy, that is to say :

"Know all men by these presents, that I, John N. Williams, in consideration of the love, good will and affection which I bear to my cousin John M. Davis, and in further consideration of one dollar to me in hand, paid by Alexander M. McIver, of Chesterfield District, and State aforesaid, have granted, bargained and sold, and by these presents do grant, bargain, sell and release unto the said Alexander M. McIver the following negroes, viz: Sampson, Tone, Tobe, Ned, John, Jack, Carson, Peter, Stephen, Edward, Phillis, Ruth, Bird, Rose, Dow, Nancy, Cloe, Effy, Lucy, Dinah, Charlotte, Jim, Anson, Sam, David, and their increase; also, seven mules, two horses, and two wagons and gear; also, the life estate of said John M. Davis, which I have heretofore purchased of him, in the following negro slaves, viz: John, Charlotte, Bonaparte, Lavinia, Serena, James, Bignoh, Betsey, Mingo, Minerva, and their increase; together with all the rights, members and appurtenances to the same, belonging or in anywise incident or appertaining; to have and to hold all and singular the premises before mentioned; unto the said Alexander M. McIver, his heirs and assigns, forever; and I do hereby bind myself, my heirs, executors, and administrators, to warrant and forever defend all and singular the premises unto the said

Alexander, against myself, my heirs, and all persons lawfully claiming or to claim the same or any part thereof, by or from this or under me: provided, nevertheless, and all the above conveyances are made on the following conditions and limitations, viz:

"1st. That the said Alexander M. McIver shall well and truly pay and discharge all the judgments of Court now outstanding and unpaid against the said John M. Davis, in Darlington District.

"2d. After the payment of the judgments aforesaid, then to pay over the proceeds of the hire or labor of said negro slaves to Jane F. Davis, (taking her receipt therefor,) the wife of the said John M. Davis, for and during the joint lives of her and her husband, John M. Davis.

"3d. Should the said Jane F. Davis die before her husband, then the said Alexander shall well and truly devote and expend all the income of the said negro slaves in the maintenance and support and education of all the children of said John M. Davis, making no distinction between those of the present and those of the first marriage.

"4th. At and after the decease of the said John M. Davis, then, in this case, the said Alexander M. McIver shall convey and deliver the negro slaves herein mentioned to such children of the said John M. Davis as the said John M. Davis may indicate and direct by his last will and testament, now made or hereafter to be made: provided, however, that the said Alexander M. McIver may confer the execution of the trust herein created upon any agent or agents he may deem fit or proper, such agent or agents being held liable for any mismanagement of the said property, or any payment of moneys by him or them. And the said McIver shall alone be liable for his own fraudulent or willful conduct in the premises."

In a few days after the execution of the deed, it was admitted to probate, before Caleb Coker, as Magistrate, and on the 29th of the same month it was recorded in the office of the Secretary of State, at Columbia; and on the 22d day of March, 1851, it was recorded in the office of Register of Mesne Conveyance for Darlington District.

On the deed there is the following endorsement, signed by the trustee, A. M. McIver, and dated December 26, 1842:

"I hereby appoint John M. Davis my agent, under this deed."

At the time the deed was executed, John M. Davis was living on a plantation of Col. John N. Williams, near Society Hill. In 1843 he removed the greater part of the trust negroes to the State of

Georgia, and worked them on a plantation there, but his family and the other trust negroes remained on the plantation near Society Hill, free of charge, until the year 1856, when they removed to a plantation about twenty miles from Society Hill, which John M. Davis had purchased of Simon Parrott, on the 11th day of September, 1850, and to which he afterwards removed the negroes which he had taken to Georgia, except nine, which he had to sell, for the purpose of removing the others. When the land was purchased, it was not paid for, but was to be paid for in three equal installments, and a bond, in the penalty of three thousand dollars, was given by Parrott, for titles, as soon as the purchase money was paid. C. Coker & Brother were merchants at Society Hill, and from the time the title deed was executed, they furnished such supplies as were needed by John M. Davis and his family, and the trust estate, especially after the trust negroes had been brought back from Georgia, in 1850, and in return received from Davis the greater part of the crop produced, and most of the notes that were given to him from year to year for the hire of a portion of the trust negroes.

On the 3d of January, 1855, after one of the installments for the land had been paid by Davis, by funds furnished by Coker & Brother, he, in consideration of debts due by him to them, or to become due during the year 1855, assigned to them the bond which he had received from Parrott, for titles to the land, and authorized them, upon the payment of the balance of the purchase money to Parrott, to claim and to receive titles for the same, in their own names, and to hold it as "collateral security" for all the debts he then owed them, or which he should owe them, when they should pay for the land, and take titles.

On the 23d day of January, 1856, J. M. Davis executed an instrument, under seal, of which the following is a copy, to wit:

"Whereas C. Coker and Lewis M. Coker have paid Simon Parrott for the tract of land now occupied by me, containing eight hundred and nine and seven-tenths acres, and taken title in their name from the said Parrott for the same:

"Now, I do hereby agree and bind myself to consent to the sale of said land whenever the said C. Coker and Lewis M. Coker may desire to sell, and to give full and peaceable possession to all and singular the said land and its appurtenances to them, or such person or persons as they may sell to; they allowing me the proceeds of such sale on such debts as I may owe them at the time of said sale."

On the same day, C. Coker & Brother executed an obligation, under their hands and seals, to J. M. Davis, to make and execute such titles to the said tract of land as may be required upon his paying them, when required, the whole amount that he might owe them at the time.

In the early part of the year 1857, J. M. Davis confessed a judgment to C. Coker & Brother for nine thousand dollars, which was the whole amount that he owed them, not only for advances made for the trust estate, but also for the purchase money of the land.

The following is a copy of a conveyance of five of the trust negroes, made by J. M. Davis, on the 8th of February, 1861:

" $2,600.—Received, 8th February, 1861, of C. Coker & Brother, twenty-six hundred dollars, in full payment for negro woman, Charlotte, about twenty-nine years old, and her four children, viz: Sallie, about twelve years old; Stephen, about seven years old; Leaban, six years old; and infant girl, about two months old. And I do hereby warrant said negroes to be sound and healthy, and also warrant the title of the same to the said C. Coker & Brother, their heirs and assigns forever."

J. M. Davis, Jr., W. G. Davis, Ellen E. Stuckey and John J. Stuckey also executed a paper, dated February, 1861, as follows:

" We, the undersigned, children of John M. Davis, do hereby sanction and confirm the sale of negro woman, Charlotte, and her four children, and do renounce and assign all claim we have, or ever may have, to the said negroes, unto the said C. Coker & Brother, their heirs and assigns, forever."

On the same day C. Coker & Brother executed to J. M. Davis their written obligation, of which the following is a copy, to wit:

" We have this day purchased from John M. Davis a family of negroes, Charlotte, and her four children, Sallie, Stephen, Leaban, and an infant girl, for the sum of twenty-six hundred dollars, which said negroes we have hired for the balance of the year to Josiah Coker, for thirty dollars and their support; and we do hereby agree to allow the said John M. Davis until the first of January next, to receive offers for the purchase of the said family of negroes, and, if he can or does effect a sale of the same for more than the said sum of twenty-six hundred dollars, and the interest from this day, as well as any expense of doctor's bills we may have to pay for the same, we will surrender the possession of said negroes, transfer his bill of sale to such purchaser, and place to the credit of

said Davis the overplus on any debt he may then owe us; this agreement to expire and to be null and void after the 1st day of January next.

"It is understood that the above described family of negroes may be sold for one-half cash, and the balance on a credit of twelve months, and that J. M. Davis may sell the land on which he resides for a price satisfactory to us, one-fifth to be paid on the delivery of the same, on the first of January next, in cash, and the balance in one, two, three and four years, with interest from that date, to be secured to our satisfaction."

J. M. Davis failing to make a better sale of the negro slaves within the time limited, they remained the property of C. Coker & Brother, so far as they could be made such by the grantors, until they were emancipated by the action of the Government, to wit: on the first day of May, 1865. The plantation has remained up to this time in the possession of J. M. Davis, without the payment of any rent, and without any new agreement upon the subject.

The judgment debts of John M. Davis, at the time the trust deed was executed, have all been paid, the last of which amounted to $247.57, and was paid by C. Coker & Brother to Col. Williams, the owner of the same, on the 30th April, 1856. On the 10th day of July, 1850, Alexander M. McIver died intestate, and, after his death, J. M. Davis continued to manage the trust estate, by hiring out a part of the trust negroes, and employing the others in planting and collecting, and applying the proceeds to the use of his family, and the purposes of the trust estate, as he had before done, without taking any receipt from Jane F. Davis, as required by the trust deed. J. M. Davis was insolvent at the time the trust deed was executed, and has continued to be insolvent. From the evidence, I infer that by far the greater part of the notes taken by him for the hire of negroes belonging to the trust estate, and the cotton crops produced by them, went into the hands of C. Coker & Brother, but that these were not sufficient for the support of the family and of the trust negroes; not because the expenses were so heavy, but from the fact that the planting operations were not successfully carried on. The balance against Davis, as agent of the trust estate in favor of C. Coker & Brother, became larger from year to year, and, in 1867, after the reception of large payments in Confederate money, and, after a credit for two thousand six hundred dollars was given for Charlotte, and her four children, it amounted to $———.

Since the close of the late war the complainant, Edgar W. Charles, was substituted as trustee in the place of Alexander M. McIver. John M. Davis and wife, Jane F., are still living, and have the following named children living, to wit: Ellen E., the wife of John J. Stuckey; William G. Davis, and Charles A. Davis, who is still a minor.

On or about the first of January, 1867, J. M. Davis was served with a notice by C. Coker & Brother, after some negotiations between the parties, that if he did not, within a short time, surrender to them the possession of the said plantation, that they would institute proceedings for the purpose of ousting him, which led to the filing of this bill.

The complainant insists that, although the plantation was first purchased by J. M. Davis, in his own name, yet it was necessarily done by him for the trust estate, from the fact that he was insolvent at the time and could not expect to pay for it in any other way than by the use of the proceeds of the trust estate, and from the further fact the Cokers have, at different times, received enough of the proceeds of the trust estate to pay for the land. He insists that he is now entitled to a conveyance of the plantation for the trusts of the trust estate. He also insists, that inasmuch as C. Coker & Brother, in 1857, took a confession of judgment from J. M. Davis, that they cannot resort to the proceeds of the trust estate to reimburse themselves for any balance that was due by it to them at that time, and which was included in the judgment. He also insists that he is entitled to an account from them for all the cotton, notes for negro hire, drafts on factors, etc., which they, at any time, received from J. M. Davis, and which were the proceeds of the trust estate; and he, also, insists that they are bound to account to him for at least two thousand six hundred dollars, as of the 8th of February, 1861, as a part of the corpus of the trust estate, that being the amount which they agreed to pay for Charlotte and her four children, and that, really, they ought to account for a larger amount under the allegation that they took the negroes for less than their real value; and he, also, insists that, in their dealings with J. M. Davis, after the death of A. M. McIver, in 1850, they should be regarded as having dealt with a stranger, and not the regularly authorized agent of the trust estate.

C. Coker & Brother, in the first place, interpose the objection to all the claims of the complainant that, by the terms of the deed from Colonel Williams to A. M. McIver, the proceeds of the estate

were to be paid over to Jane F. Davis, without imposing any trusts, and, upon that being done, the marital rights of the husband attached, and that he had the right to dispose of them in such manner as he thought best. To this view of the case I cannot give my assent; for in requiring A. M. McIver to take her receipt therefor, "during the joint lives of herself and husband," clearly implied that she was to have an estate in the same limited to her sole and separate use.—*Wilson* vs. *Baily*, 3 Strob. Eq., 261.

From the evidence before the Court, I am of the opinion that the advances made by C. Coker & Brother for the support of Jane F. Davis and her family, for the education of the children, for the payment of doctors' bills, and for supplies furnished for carrying on planting operations from the time the dealings between the parties commenced until 1861, when they end, amounted to more than all the proceeds of the trust property which went into their hands, and I cannot, therefore, order a general accounting, unless I were to do it on the ground that the provisions of the trust deed had not been strictly complied with. It is true that the agency of J. M. Davis was revoked by the death of A. M. McIver, and that the receipts of Mrs. Davis were not taken, as required, by the deed; but Mrs. Davis was cognizant of the transactions between the parties, and by her own conduct sanctioned them, and it would be a fraud upon the rights of C. Coker & Brother to treat all their transactions with J. M. Davis, since 1850, and even before that, as void, which the Court will not do.

From a careful examination of the pleadings and evidence, I am satisfied that the whole purchase money for the land was paid by C. Coker & Brother, except it may be that a portion of the second installment was not, and the doubt on this point is created by the evidence of C. Coker himself, and the matter will have to be referred to the Commissioner. From the evidence before me, I cannot regard the purchase of the land as one made by the trust estate, though I have no doubt but J. M. Davis made the purchase, supposing that, with the surplus proceeds of the estate, he would be able to pay for it, and that the *cestuis que trust* would be thereby benefited, and I do not hold that the debt against the trust estate was satisfied by C. Coker & Brother taking a judgment against J. M. Davis for the same. It was only taking a collateral security from a third party for the debt. Are the defendants, C. Coker & Brother, entitled to have the possession of the plantation surrendered to them? I think not; for the whole transaction

9A

shows that the understanding between the parties was that the land should be held by them as a security for their money, and that, being the case, they can only hold as mortgagees.

C. Coker & Brother purchased Charlotte and her four children for two thousand six hundred dollars, which the bill alleges was less than their real value, but the evidence does not sustain the allegation; knowing, at the time the purchase was made, that they were subject to the trusts of the deed, and endeavoring, as far as they could, without applying to this Court, to obviate that difficulty, to what extent did they succeed? The presumption of fact is that J. M. Davis, having executed a deed for the negroes, will, by his last will and testament, make good his conveyance by bequeathing the trust property to such of his children as have renounced their interest in Charlotte and her children, but the rights of Mrs. Davis, under the trust deed, cannot be defeated by the conveyance of her husband and her children; and, if the negroes were still slaves, she might recover their hire, or, if it were more beneficial to her, the purchase might be confirmed, and she might recover her interest in the same from the time of the sale. The negroes having been emancipated, and Mrs. Davis and her infant son being the only parties interested in the result, the Court makes the election for them, and confirms the sale made by J. M. Davis in 1860, and directs that C. Coker & Brother do pay for her benefit whatever the hire of the said negroes may have been worth from the 8th day of February, 1861, to the 1st day of May, 1865, when they were emancipated; and, also, that, from the 1st day of May, 1865, they do pay for her use the interest on two thousand six hundred dollars, with interest from the end of each year, and that they continue to do the same so long as both J. M. Davis and Mrs. Davis may continue to live; and, if she should die before J. M. Davis, then that they do annually pay, for the benefit of Charles A. Davis, the sum to which he shall be entitled, under the terms of the deed, until the death of his father, and that their liability shall not extend beyond the limits above indicated.

It is ordered and decreed that the above opinion be taken as the judgment of the Court.

It is also ordered and decreed that it be referred to the Commissioner to ascertain and report the different amounts paid by the said C. Coker & Brother for the plantation which J. M. Davis purchased from S. Parrott, including the first payment made by J. M. Davis with funds furnished by C. Coker & Brother, but excluding

any means furnished by J. M. Davis with which to pay the second installment of the purchase money, without he has credit for the same heretofore; and, also, the interest that may be due on the different payments.

It is also ordered and decreed that it be referred to the Commissioner to ascertain and report what the hire of Charlotte and her four children was worth from 8th February, 1861, to 1st May, 1865, with interest calculated from the end of each year, on the hire for that year; and, also, the amount of interest now due on $2,600 from the 1st of May, 1865, with interest calculated from the end of each year on the interest of that year. It is also ordered and decreed that further orders may be taken at the foot of this decree, and that the Commissioner be at liberty to report any special matter.

It is also ordered and decreed that C. Coker & Brother do pay the costs of the complainants, Jane F. Davis and Charles A. Davis, and that the other parties do pay their own costs.

The plaintiff appealed, and now moved this Court for a modification of the decree in the particulars, and on the grounds following, to wit:

1. Because a general accounting on the principles of the decree itself should have been ordered by the Messrs. Coker for all the trust funds which they received from the death of the original trustee, Alexander M. McIver, Esq., inasmuch as the *cestui que trusts* were under disabilities, which, as well as the trust, were well known from the beginning to the Messrs. Coker, as well as the insolvency of the party with whom they dealt, otherwise the trust deed must be deemed a nullity.

2. Because no power can change the terms of a trust while it remains unexecuted, short of the power of a Court of Equity, and then only on a case made. The trust property remains trust property as long as the trust remains, and parties with notice of the trust are trustees, who take it otherwise than by its terms, or an order of Court, whether for one year or fifty.

3. Because the statute of limitations cannot run against those disabled by coverture or infancy, and the vacancy in a trusteeship can furnish no presumption that the trust is executed. Parties under disability are not to lose their rights by *presumption* of benefit, or even because they do receive some aid. Their very disability commend their rights to the protection of the Court. From the day of the death of the original trustee to the day of the appointment of

another, the Court stood open. This defendant knew. They pre-
ferred to treat with an insolvent husband and father and take the
chances. They must abide the consequences, and not those who
were disabled in law and equity to protect themselves.

4. Because the Simon Parrott land should have been decreed to
be trust property, inasmuch as the Messrs. Coker received in pay-
ment for it any and all advances they made, in trust funds largely
more than enough to pay them.

5. Because the judgment confessed to them by J. M. Davis satis-
fied all their claims, even against the trust estate, if they had
any.

6. Because they (the Messrs. Coker) should account for all inte-
rest on moneys received for the sale of trust negroes from the day
of the sale to them.

C. Coker & Brother also appealed, and now moved this Court to
reform and modify the decree in respect to the objections herein sug-
gested, and on the grounds following, to wit :

1. Because, it is respectfully submitted, the Chancellor erred in
decreeing that the Messrs. Coker should pay interest on the purchase
price of the slaves, Charlotte and her children, after their emanci-
pation, to Jane F. Davis and her infant son, inasmuch as the pur-
chase price was applied to the reduction of the debt created for the
benefit of Jane F. Davis and family, and the trust estate, leaving the
balance of said debt, which is on interest, greater than can be paid
from the security held by the Cokers, or from any other source—the
*cestui que trusts*, meanwhile, enjoying the possession and use of the
plantation pledged to secure said debt.

2. Because that part of the decree which requires the Messrs.
Coker to pay interest on the purchase price of the slaves, after their
emancipation, is in conflict with the Constitution of the State.

3. Because His Honor erred in decreeing that any accounting
should be had against the Messrs. Coker, and especially in exclud-
ing them from the benefit of any amo⬤ furnished by J. M. Davis
in making the second payment on the land, inasmuch as the means
furnished by him, if any, were such as he had a right to use in pay-
ing the debt due them, or in securing the debt.

4. Because the Chancellor should have decreed a sale of the
premises, on which he decided the Cokers held an equitable mort-
gage, and ordered the application of the proceeds towards the pay-
ment of the mortgage debt.

5. Because rents and profits of the plantation should have been

decreed to the Cokers, at least from the time the complainant enjoined them against the means of availing themselves of their security.

6. Because, their principal grounds of complaint being decided against the complainant, the equities being entirely in favor of the Cokers, His Honor erred in decreeing that they should pay the costs of complainant and of Mrs. Davis and son—being, in fact, all costs.

*Spain,* for the plaintiff.

*Edwards, McIver & Moore,* for C. Coker & Brother.

Sept. 30, 1870. The opinion of the Court was delivered by

MOSES, C. J.   We concur with the Chancellor, that the interest of the wife, Jane F. Davis, under the terms of the deed, is to her sole and separate use.

To create such an interest, it is sufficient, if a plain intention appears, to exclude the husband from its legal ownership. Technical words are not necessary if there is enough to show, by clear expression, that the purpose was to deprive him of that title, which, in the absence of such intention, he would acquire by virtue of his marital rights. A direction inconsistent with his full ownership of the property will be as potent to protect her in the separate enjoyment, as if the most express terms were employed to that end.

Where, therefore, the instrument establishing the trust makes the receipt of the wife a sufficient discharge, the employment of those words is held to confer a sole and separate estate.—*Lee* vs. *Prieaux,* 3 Br. C. C., 381; *Tyler* vs. *Lake,* 2 Russ. & M., 183; *Wilson* vs. *Bailey,* 3 Strob. Eq., 261.

The deed did not, in any manner, restrict the wife in the appropriation of the proceeds of the hire or labor of the slaves. They were not to be held by her subject to a particular power of disposition, either by appointment or otherwise. Her use of them was not limited to ⬤ special provision, and she is to be regarded, in respect to the control of the income secured to her separate use, as a *feme sole.*—*Ewing* vs. *Smith,* 3 Dess., 417; *Dunn,* et. al., vs. *Dunn,* et. al., 1 S. C., N. S; *Metho. Epis. Church* vs. *Jaques,* 3 John. Ch., 113. Although the agency of the husband, John M. Davis, ceased upon the death of Alexander H. McIver, the trustee, still the legal title to the property was in his personal representative. "Trusts expressly created, when of personalty, on the death of the trustee vest in his executors or administrators."—Willis on

Trustees, 53; Hill on Trustees, 303. Whether Davis continued to manage the trust estate after the death of McIver, with the express authority of his personal representative, or whether, without any interference on his part, he remained in the supervision and direction of it, as he had in the lifetime of the original trustee, does not appear. While Davis and his wife were both alive, no one was entitled to the proceeds or profits of the property, but the *cestui que trust*, the said Mrs. Jane F. Davis. During all the transactions between her husband and the defendants, C. Coker & Brother, of which, according to the Circuit decree, she had full knowledge, she did not take a single step within her competency, as a married woman with a sole and separate estate, to arrest the course of her husband with respect to her settled interest, but, on the contrary, sanctioned it by her conduct. From the execution of the deed in 1842 to 1861, the same manner of dealing was conducted between the parties, and to make the Messrs. Coker now responsible for so much of the payment to them of the proceeds of the hire or labor of the slaves, the subject of the trust estate, which their advances, in a great part, tended to aid and sustain, would not be consistent with the principles of honesty and fair dealing which Courts of Equity encourage and enforce.

It cannot be pretended that if the proceeds of the trust property had been paid over to Mrs. Davis by her husband and her receipt therefor taken, that she was incompetent to transfer them to him to deal with at his pleasure.

If the trusteeship had ever been vacant, and the husband dealt with the estate as his own, he would be treated in equity as a trustee for the benefit of the wife.—Hill on Trustees, 420.

If Davis, the husband, is to be considered as a trustee *de son tort*, by having, of his own will, intermeddled with the management of the trust, he would be subject to the same rules and remedies which obtain as to constructive trustees.—Hill on Trustees, 173.

When such a trustee has complied with all the requisitions of the deed or will which devolved on the party in whom the legal title was intended to have been vested, he could not be called to answer anew, if he had already done all which could have been demanded of a rightful trustee, for then there would be nothing of which the *cestui que trust* could properly complain.

The proof leaves no doubt of the fact that the Messrs. Coker had notice of the deed, and of the death of McIver, and they are therefore to be considered in the position of those interfering with trust

funds, with knowledge of the source from which they were derived and the purposes to which they were appropriated.

The condition, however, in the deed, which required the receipt of Mrs. Davis on the payment to her of the proceeds, was intended to protect the wife against the legal rights of the husband, by securing to her sole and separate enjoyment the usufruct of the property. Its aim and object were to subject to her use the proceeds of the labor of the slaves, with unrestrained power, on their receipt, to dispose of them, if she so desired, in favor either of her husband or a stranger. A technical adherence to the terms of the deed could do no more than ensure the payment of the proceeds to her, that she might have uncontrolled use of them. The deed in no way undertook to regulate or restrict her disposition, and, if the end which it was intended to accomplish has in fact been attained, it would not be consistent with any rule of equity or justice to convert what was intended as a security for her into a medium through which she could perpetrate a fraud upon others.

The evidence impressed the Chancellor, as it does this Court, with the fact of full cognizance, on the part of the wife, of all transactions between her husband and the Messrs. Coker in regard to the annual transfer of the crops and the cash and notes received for the hire of the slaves, in consideration of the advances and supplies furnished by them. Whether, beyond their necessity for the support of the trust property, there would be thereby acquired any claim against it, seems to be fully settled by the decisions of the former Appellate Court of this State. That question, however, is not involved in the ground on which we base our judgment here.

Mrs. Davis, in her testimony, states that, after the death of McIver, her husband managed the trust estate in the same manner as he had done in his lifetime. From 1842, when the deed was executed, up to 1861, there was the same character of dealing; and, during this whole period, if the wife was not aware of the application of the annual proceeds, it is strange that she never called for their payment to her. In fact, to use her own language, "she looked upon Mr. Davis as much her agent as Mr. McIver looked upon him as the party authorized to manage the business all the time."

We are not considering here the right of this *cestui que trust*, being covert, to constitute an agent when the power is not specifically given; for if she, without such authority, could re-nominate

her husband, she could as well name a third person, and without a special grant of the right she could appoint neither.

We have already said that her control of the proceeds, when received by her in conformity with the stipulations of the deed, enabled her to make her husband the beneficiary of them. Even where the married woman is considered, in regard to her separate estate, as a *feme sole*, only to the extent of the power conferred by the instrument, if this does not restrict her disposition and alienation—if she permits the husband to receive the rents and profits of her estate—the presumption is that it is with her assent and by way of gift.—Hill on Trustees, 425, and note 2.

In *Methodist Episcopal Church* vs. *Jaques*, 3 John. Ch., 80, Chancellor Kent says, in reference to this question, " that, as between strangers, a more strict and severe proof would be required; but the books teach us that the greatest liberality is shewn, and the most favorable presumptions indulged, where the husband is permitted by the wife to be concerned in the management of the income of her separate estate as it occasionally accrues."

The point of gift does not arise here, for the husband prefers no claim, through such title, to the annual proceeds; but this long continued dealing between him and the Messrs. Coker, in respect to them, sanctioned by knowledge and acquiescence, precludes any right on the part of the plaintiff, the substituted trustee, to call upon them for an account in her behalf.

The bill in regard to the rights of the wife, as to the annual proceeds, is not entitled to favor. It is not framed in an aspect that recommends it to any consideration beyond that which the mere principles which it seeks to enforce demand. The wife has preferred no claim through a next friend; but the substituted trustee is the plaintiff complaining, and she and her husband and children are made parties defendant. Neither she nor they, (save the minor child,) file any answer; but on the subpœna is the following endorsement, subscribed with their respective names: " We accept service of this writ, admit the worth (*a*) of the statements in the bill contained, waive time, and consent that the prayer in the said bill shall be granted."

It is a proper occasion to say that this practice is not to be encouraged. A defendant called in by bill must answer in proper form, or take all the consequences which a default in obeying the requisitions of the writ will entail. If he proposes to answer, it

---

(*a*) " *Sic*," in brief: " Truth," it it presumed, was the word used.

must be according to the forms prescribed by the rules and usage of the Court.

The view which we have taken of the points made, so far as already considered, preclude the right of plaintiff to a general account of the funds alleged in the bill to have been received by the defendants, the Messrs. Coker, of the said J. M. Davis, or to a transfer or conveyance of the Parrott land.

We concur with the Chancellor in holding that the Messrs. Coker are not entitled to the land. The whole transaction places it beyond doubt, that it was to be held as a security for the debt to them. They can claim nothing more than an equitable mortgage of it, and a sale of the premises, which will be directed.

We also concur with the Circuit decree in holding that the judgment confessed by Davis was no satisfaction of the debt due them on account of their advances for the payment of the land. Even if in a Court of law it could be so ruled, when it plainly appears that in taking it there was no intention to change or affect their rights as to the money advanced, or their remedy for the debt due them on its account, equity will not regard that as satisfaction which the parties themselves, on both sides, did not intend so to operate.

In *Gardner* vs. *Hust*, 2 Rich., 601, it was held, that "the taking of a higher security, if accepted as satisfaction, extinguishes a lower one for the same debt; and the law, it seems, will imply, in the absence of proof to the contrary, that the higher security was taken as satisfaction; but if it be made to appear that it was not taken as satisfaction, then it will be merely additional or commutative security."

If the claim of the Messrs. Coker to the land is only by and through an equitable mortgage for the security of the money advanced in the purchase, it cannot be regarded as merged in the judgment, or waived by it. In fact, if Davis was utterly insolvent when the confession was given, as the bill alleges, the mortgage is not only a better, but a higher security. Through the judgment the land could not be reached while it can be available to respond to the mortgage by the lien which it holds.

The instrument executed by the Messrs. Coker & Brother, to the said Davis, on the day of the taking of the confession, referring to the stipulation of time when payment was to be demanded, expressly declares, "that nothing in the said instrument is to waive our right to claim any and all such property or money as may now be liable for the said debt."

This recital brings the question within the principle declared in *Twopenny* vs. *Boys and Young*, 3 B. & C., 208, and *Sally* vs. *Forbes and Elleman*, 2 B. & A., 38.

The claim of the plaintiff, as to the negro Charlotte and her four children, is affected by other considerations. They were of the *corpus* of the estate, and after the death of Jane F. Davis, in the lifetime of her husband, the proceeds are to be applied to the maintenance and education of the children, and on the death of the husband they were to be conveyed and delivered to such of his children as he might indicate by his last will and testament. All of the children have renounced and assigned to the said Messrs. Coker their interest in the said slaves so sold, save the minor son, Charles A. Davis.

If McIver, the original, or any lawfully substituted trustee, had sold Charlotte and her children to one having notice of the deed, the sale would have been invalid. Much more is it so when made by one in no way invested with the legal title. The *cestuis que trust* interested are the married woman and the infant. On their behalf the Circuit Court, in and by its decree, has elected, for their benefit, to confirm the sale. When the Messrs. Coker bought, they well knew that the vendor had no power to sell. They assumed all the risk of defect of title, and it would not be equitable now to permit them to renounce the purchase, because the slaves were afterwards emancipated. One knowingly dealing with trust property to the prejudice of those for whose benefit it was held, must stand to his bargain, unless they insist on defeating it. With what grace could a purchaser ask to set aside a sale on the ground of a supposed defect of title, afterwards arising, when he knew, at the time it was made, the vendor could convey no title?

When the sale was confirmed by the decree, all the incidents attaching to such a transaction must necessarily follow. One of these is the liability of the buyer for the purchase money and interest. The Chancellor, therefore, erred in discriminating between the right of the *cestui que trust* to the value of the hire of the slaves to the date of their freedom, and from that period to the interest on the sum at which they were sold. If the title is held to have been in the Cokers, the trust estate could not be entitled to the value of their labor. The interest must therefore be allowed.

If, in fact, as alleged in the answer, a part of the consideration of the said slaves was four mules at five hundred dollars, received by the trust estate, and of which it had the benefit, the Messrs.

Coker would be entitled to a credit for that amount. It would not be just, or even reasonable, to require them to pay the interest on the price of the slaves (for the benefit of the parties now alone interested in the trust), and allow them to enjoy the past and future profit of the property thus substituted. The Chancellor, however, in his decree, does not express his judgment as to the fact, and we are not, therefore, prepared to apply the equitable principle expressed. An opportunity must therefore be allowed the Messrs. Coker to introduce testimony on the point, with full right to the plaintiff to controvert it.

The Circuit decree is affirmed, except as it is changed or modified by this opinion.

It is ordered and adjudged that the case be remanded to the Circuit Court for the County of Darlington, that the said Court may direct an account to be taken of the several amounts paid by the said C. Coker & Brother, for the plantation described in the pleadings as purchased from S. Parrott, including the first or any other payment made by the said J. M. Davis, with funds furnished by them, and the interest due on the respective payments. That a sale of the said premises be made, under the order and direction of the said Court, and the amount so found due to the said C. Coker & Brother be first paid to them from the proceeds, and the balance of the proceeds (if any) to be held subject to the further order of the said Court. That the said Court do also direct an account to be taken of the interest on the purchase money of said slaves so sold, to wit, the sum of $2,600, from February 8, 1861, with interest from the end of each year on the interest of that year. That this being ascertained, the said C. Coker & Brother be decreed to pay the same to the said plaintiff, or to the said Jane F. Davis, on her receipt, and that they further pay her annually, on her receipt, the interest on the said purchase money, from the day to which the account may be brought down, during the joint lives of herself and husband, J. M. Davis.

Should the said Jane H. Davis die before her said husband, then the said Charles A. Davis, if living, is to be at liberty to apply to the Circuit Court, under this bill, for the payment by the said C. Coker & Brother of whatever proportion of interest on the price of the said slaves he may be entitled to by the terms of the said deed.

The Circuit Court will, also, by its order, enquire and ascertain whether four or any other number of mules were received in part payment of the sale of Charlotte and children, and at what price,

and if the trust estate got the benefit of the same. In the event of a conclusion in favor of the said C. Coker & Brother, in these particulars, it will direct that they have a credit for the sum so found, with interest from the day of the sale, on the amounts herein decreed to be paid to the said plaintiff, or the said Jane F. Davis.

Decree modified.

*Willard,* A. J., and *Wright,* A. J., concurred.