**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JASPAL SINGH UPPAL,

*Petitioner,*

v.

ERIC H. HOLDER Jr., Attorney
General,

*Respondent.*

No. 07-72614

Agency No.
A076-841-745

ORDER AND
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 10, 2009—San Francisco, California

Filed May 21, 2010

Before: David R. Thompson, Marsha S. Berzon and
N. Randy Smith, Circuit Judges.

Opinion by Judge Berzon

7303

## COUNSEL

Martin Avila Robles, Immigration Practice Group, P.C., San Francisco, California, for the petitioner.

Tiffany Walters Kleinert, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## ORDER

The Opinion and Concurrence in Part/Dissent in Part filed August 11, 2009, Slip Op. 10849, and appearing at 576 F.3d 1014 (9th Cir. 2009), are withdrawn. They may not be cited

as precedent by or to this court or any district court of the Ninth Circuit.

The superseding opinion will be filed concurrently with this order. The parties may file an additional petition for rehearing or rehearing en banc.

## OPINION

BERZON, Circuit Judge:

Jaspal Singh Uppal, a native and citizen of India, petitions for review of the Board of Immigration Appeal's (BIA) order dismissing his appeal. Uppal contends the BIA erred in concluding that he had committed a crime which categorically involved moral turpitude, thus rendering him inadmissible at the time of his adjustment of status, and subject to removal. We agree and grant the petition.

## BACKGROUND

Jaspal Singh Uppal entered the United States illegally around February 1, 1997, near Blaine, Washington. He was granted asylum in 1998 and accorded status as a permanent resident in 2004.

On April 11, 2006, the Department of Homeland Security ("DHS") issued Uppal a Notice to Appear. The Notice charged Uppal as removable under 8 U.S.C. § 1227(a)(1)(A), alleging that Uppal was inadmissible at the time of his entry and/or adjustment of status on two grounds: 1) he had been convicted of a crime involving moral turpitude, and 2) he attempted to obtain immigration benefits through fraud or misrepresentation of a material fact. 8 U.S.C. § 1182(a)(2)(A)(i)(I); (a)(6)(C)(i).

Specifically, the Notice alleged that on February 21, 1995, Uppal was convicted of aggravated assault in violation of § 268[1] of the Canada Criminal Code and deported from Canada to India as a result. The Notice further alleged that Uppal's application for asylum made no mention of this conviction or his status as a Canadian permanent resident.

On receiving the Notice, Uppal filed a formal motion to terminate the removal proceedings. Without holding an evidentiary hearing the IJ issued a final order denying the motion. Uppal's conviction under § 268 of the Criminal Code of Canada (on occasion hereafter "§ 268"), the IJ held, constituted a categorical crime involving moral turpitude ("CIMT"). The IJ also concluded that Uppal had committed immigration fraud by concealing both the conviction and his status as a Canadian permanent resident from U.S. immigration officials.

Uppal timely appealed the IJ's order to the BIA. In a one-panel-member, unpublished decision, the BIA affirmed the IJ's order. Undertaking a *de novo* review of the moral turpitude issue, the BIA concluded that the IJ was correct in determining that a § 268 offense constituted a categorical CIMT, rendering Uppal inadmissible at the time of his adjustment of status. The BIA reasoned that Uppal "was convicted of having committed aggravated assault by, in the process of committing an assault, wounding, maiming, disfiguring or endangering the life of the victim." Basing its conclusion on its interpretation of the statutory language of § 268, the BIA determined that "the crime cannot be committed negligently or carelessly; rather, [the crime] requires willfulness of the action which inflicts significant injury." As the BIA found Uppal removable on that basis alone, it did not reach the immigration fraud issue.

---

[1]The Notice to Appear alleged that Uppal was convicted of violating § 268(2) of the Canada Criminal Code. As that subsection refers only to the maximum punishment applicable to aggravated assault, we construe the allegation as one of prior conviction under subsection 268(1), which sets forth the elements of the crime.

Uppal timely filed this petition for review.

## JURISDICTION

We have jurisdiction to review this final order of removal under 8 U.S.C. § 1252(a)(1). Although our jurisdiction to review orders of removal against "criminal aliens" is limited by 8 U.S.C. § 1252(a)(2)(C), we retain jurisdiction to review constitutional challenges and questions of law. *See* 8 U.S.C. § 1252(a)(2)(C), (a)(2)(D). Whether a crime involves moral turpitude is a question of law not subject to the jurisdiction-stripping provision of § 1252(a)(2)(C). *Tall v. Mukasey*, 517 F.3d 1115, 1118-19 (9th Cir. 2008).

## DISCUSSION

The determination whether a conviction under a criminal statute is categorically a CIMT involves two steps, to which different standards of review apply. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 907 (9th Cir. 2009) (en banc). First, the BIA must identify the elements of the statute necessary to secure a conviction. Because "[t]he BIA has no special expertise by virtue of its statutory responsibilities in construing state or federal criminal statutes," we review its conclusion in that regard *de novo*. *Id.* at 907. Second, once it identifies the elements of the statute, the BIA must compare those elements to the generic definition of a crime involving moral turpitude and decide whether they meet the definition. *Id.* at 908; *see also Morales-Garcia v. Holder*, 567 F.3d 1058, 1064 (9th Cir. 2009). Because the BIA does have expertise in making this determination, we defer to its conclusion if warranted, following the *Chevron* framework if the decision is a published decision (or an unpublished decision directly controlled by a published decision interpreting the same statute), and following the *Skidmore* framework if the decision is unpublished (and not directly controlled by any published decision interpreting the same statute). *Marmolejo-Campos*, 558 F.3d at 909-11; *see also Chevron U.S.A., Inc. v. Natural Res. Def.*

*Council, Inc.*, 467 U.S. 837, 843 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). As the decision here is of the latter variety, our deference analysis on the second prong of the CIMT inquiry must proceed under *Skidmore*.

### 1. The Elements of § 268

**[1]** We turn to the first step of the inquiry: identifying the elements of Canada Criminal Code § 268 (aggravated assault). A person commits "aggravated assault" under § 268 of the Canada Criminal Code if he "wounds, maims, disfigures, or endangers the life of" another. Can. Crim. Code, R.S.C., ch. C-46 § 268(1) (1985). As the statute thus requires *either* injury *or* the "endanger[ment] of the life of" the victim, it can be satisfied even if no actual injury occurs.

Canadian case law interpreting § 268 leaves no doubt that there need be no actual harm. As the Canadian Supreme Court explained: "There is no prerequisite that any harm must actually have resulted. This first requirement of § 268(1) is satisfied by the significant risk to the li[fe] of the [victim] occasioned by the [application of force]." *R. v. Cuerrier*, [1998] 2 S.C.R. 371, ¶ 95 (Can.).

**[2]** Although it is difficult to tell for sure from the BIA's terse analysis whether the BIA correctly identified the elements of § 268, most likely it did not. The BIA's decision quotes the statute's actus reus language—"wound[ing], maim[ing], disfigur[ing], or endanger[ing] the life of the complainant"—correctly, but it then goes on to paraphrase the statute as requiring "willfulness of the action which inflicts significant injury" (emphasis added), suggesting that it has overlooked the endangerment alternative. We therefore conclude that the BIA misapprehended the actus reus elements required for a conviction under § 268. Because the BIA failed to identify the elements of § 268 correctly, its CIMT analysis, in which it compares the elements it has identified to the generic definition of moral turpitude, is misdirected and so

merits no deference from this Court. *See Morales-Garcia*, 567 F.3d at 1066 n.4.

### 2. *Comparison of § 268 to the CIMT definition*

**[3]** Even if we misread the BIA's opinion as premised on the erroneous understanding that § 268 requires actual injury, we still could not defer to the BIA's conclusion that § 268 is categorically a CIMT. Under *Skidmore*, the measure of deference afforded to the agency "depends upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140. When this standard is applied, the second step of the BIA's CIMT analysis does not warrant deference. That analysis is neither thoroughly reasoned nor consistent with prior BIA and Ninth Circuit case law. In addition, there is a head-on conflict between the BIA's analysis and this Court's recent decision in *Morales-Garcia v. Holder*, 567 F.3d 1058, as well as a general conflict with the BIA's own case law.

To see why the BIA's CIMT analysis cannot stand, we begin by eludicating § 268's mens rea requirement. To do so, we must read § 268 together with § 265, which establishes a base-level mens rea requirement for all assault offenses under the Criminal Code of Canada:

A person commits an assault when

(a) without the consent of another person, he applies force intentionally to that other person, directly or indirectly;

(b) he attempts or threatens, by an act or a gesture, to apply force to another person, if he has, or causes that other person to

believe on reasonable grounds that he has, present ability to effect his purpose; or

(c) while openly wearing or carrying a weapon or an imitation thereof, he accosts or impedes another person or begs.

Can. Crim. Code, R.S.C., ch. C-46 § 265(1) (1985); *Cuerrier*, 2 S.C.R. 371, ¶¶ 94-95.

**[4]** The mens rea required for a conviction under § 268 thus includes the base-level mens rea required for simple assault: (1) the force must be intentionally applied; and (2) the force must be applied without the victim's consent, with the perpetrator "intentionally or recklessly [disregarding the lack of consent] or being wil[l]fully blind to the fact that the victim does not consent." *R. v. Williams*, [2003] 2 S.C.R. 134, ¶ 22 (Can.). In addition to the base-level mens rea requirement, a conviction for aggravated assault requires that the "risk of bodily harm" resulting from the application of force be "objective[ly] fores[eeable.]" *Id.* As this summary indicates, a conviction for aggravated assault under § 268 does not require that the perpetrator specifically intend to inflict serious physical injury, or any injury at all. Indeed, under § 268, a perpetrator need not even recklessly disregard the risk of bodily harm or endangerment resulting from the assault. Instead, § 268 requires only that a reasonable person would know that the assault carries a risk of bodily injury or endangerment, which is a negligence standard. *See Marmolejo-Campos*, 558 F.3d at 912.

Once again, this understanding is confirmed by case law. As the Canadian Supreme Court noted in *R. v. Godin*, "[i]t is not necessary that there be an intent to wound or maim or disfigure [under § 268]. The section pertains to an assault that has the *consequences* of wounding, maiming or disfiguring." [1994] 2 S.C.R. 484, ¶ 2 (emphasis added); *see also R. v. L.*, [1992] 59 O.A.C. 130, ¶¶ 8-10 (Ont. Ct. App.) ("[T]he essen-

tial intent required for an assault . . . remains the same for all forms of assault, including aggravated assault. Parliament . . . never intended that, on an indictment charging 'aggravated assault,' the prosecution would be required to prove that the accused intended to wound, maim or disfigure the complainant or endanger his life. . . . Aggravated assault is . . . a crime of general intent." (internal quotation marks and citations omitted)) (interpreting the former § 245.2, which is identical to the current § 268). Likewise, in *R. v. Brodie*, the British Columbia Court of Appeal affirmed an aggravated assault conviction in which the defendant had forcefully pushed the victim in a driveway, causing the victim to fall and resulting in life-long brain damage. *See* [1995] 60 B.C.A.C. 153, ¶¶ 5, 12. The court noted that "a *reasonable* person who contemplated pushing another over . . . would be bound to foresee that such conduct would expose the victim to risk of bodily harm." *Id.* ¶ 10 (emphasis added).

[5] Comparing the requisite mens rea under § 268 with the case law concerning assaults as CIMTs, it becomes clear that a § 268 conviction cannot categorically be a CIMT. Under well-established law, simple assault and battery convictions are not categorically CIMT convictions because the required mens rea for simple assault or battery is usually the intent to touch another offensively, not the "evil" intent typically required for a CIMT.[2]

---

[2]*See Matter of Solon*, 24 I. & N. Dec. 239, 241 (BIA 2007) ("Offenses characterized as 'simple assaults' are generally not considered to be crimes involving moral turpitude. This is so because they require general intent only and may be committed without the evil intent, depraved or vicious motive, or corrupt mind associated with moral turpitude." (internal citation omitted)); *Matter of Fualaau*, 21 I. & N. Dec. 475, 477 (BIA 1996) (defining a CIMT as " 'an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude.' " (quoting *Matter of Franklin*, 20 I. & N. Dec. 867, 868 (BIA 1994))); *Matter of B-*, 5 I. & N. Dec. 538, 540-41 (BIA 1953) (holding a simple assault committed "knowingly" upon a prison guard involved no evil intent and so was not a CIMT).

Some assault statutes, though, have been held to be CIMTs. Those statutes include as an element "some aggravating dimension" sufficient to increase the culpability of an assault or battery and so to transform the offense into one categorically a CIMT. The "aggravating dimensions" recognized as sufficiently increasing the culpability of an assault to turn an assault into a CIMT have been the use of a deadly weapon, *Matter of Medina*, 15 I. & N. Dec. 611 (BIA 1976), and a victim who has a special status or trust relationship vis à vis the perpetrator, such as a domestic partner or spouse, *In re Tran*, 21 I. & N. Dec. at 291, a child, *Guerrero de Nodahl v. I.N.S.*, 407 F.2d 1405 (9th Cir. 1969), or a peace officer, *Matter of Danesh*, 19 I. & N. Dec. 669 (BIA 1988). As these categories of cases illustrate, to rise to the level of moral turpitude, an assault crime must involve a particular type of aggravating factor, one that says something about the turpitude or blameworthiness inherent in the action. *See generally Nunez v. Holder*, 594 F.3d 1124, 1131 & n.4 (9th Cir. 2010).

The only precedential BIA case of which we are aware in which an assault offense was held categorically a CIMT despite the absence of a special protected status or trust relationship or the use of a deadly weapon is *Matter of Franklin*,

---

*See also, generally*, *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1068 (9th Cir. 2007) (en banc) (defining non-fraud CIMTs as involving conduct that is "*inherently* base, vile, or depraved" and "contrary to the [accepted] private and social duties man owes to his fellow men or to society in general" (emphasis added)); *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1165-66 (9th Cir. 2006) (discussing the requirement that a crime involve a showing of " 'willfulness' or 'evil intent' " to be classified as a CIMT, as opposed to "general intent" or "reckless[ness]"); *Notash v. Gonzales*, 427 F.3d 693, 698 (9th Cir. 2005) (holding that an act done deliberately and with knowledge does not necessarily involve the "evil intent" required for CIMT purposes); *Goldeshtein v. I.N.S.*, 8 F.3d 645, 648 (9th Cir. 1993) (rejecting the argument that "evil intent exists if a conviction requires proof that a defendant did a forbidden act 'willfully,' " where "willfully" was defined to mean "deliberately and with knowledge").

20 I. & N. Dec. 867 (BIA 1994). In *Franklin*, the BIA held that an involuntary manslaughter statute was categorically a CIMT because the statute had as elements both extreme recklessness and the death of another person, a result serious enough to raise the offense to a CIMT even without a showing of specific evil intent. *Franklin*, 20 I. & N. Dec. at 870.[3]

Consistently with these general trends in the BIA's case law, this Court recently reversed the BIA and held that California Penal Code section 273.5, which penalizes the "willful[ ] inflict[ion] upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition," is not categorically a CIMT. *See Morales-Garcia*, 567 F.3d at 1060, 1063. The Court so held because the statute did not require any special trust relationship — the victim could be merely a "former cohabitant"; it also observed that the resulting harm, a "traumatic condition," could encompass "a wound or external or internal injury [even] . . . of a minor . . . nature." *Id.* at 1063.

---

[3]In *Matter of Fualaau*, a case involving reckless assault, the BIA hinted that something short of death—perhaps "serious bodily injury"—might be sufficient. *See* 21 I. & N. Dec. at 477 (indicating that reckless assault was *not* categorically a CIMT because it did not require "serious bodily injury"). Moreover, some of our sister circuits consider serious bodily injury resulting from assault an aggravating factor where the mens rea standard requires recklessness. *See Godinez-Arroyo v. Mukasey*, 540 F.3d 848, 849, 851 (8th Cir. 2008) (affirming an unpublished BIA opinion that held a conviction for "second-degree assault . . . for recklessly causing serious physical injury to another person" was a CIMT (internal quotation marks and alterations omitted)); *Pichardo v. I.N.S.*, 104 F.3d 756, 760 (5th Cir. 1997) (determining that an aggravated assault statute requiring "serious bodily injury" to any person or "bodily injury" to a police officer or inflicted with a deadly weapon constituted a CIMT because it contained the elements of "bodily injury together with a minimum mens rea of recklessness"). Because the criminal provision at issue here requires neither recklessness with respect to harm nor serious bodily injury, these decisions are not useful guides.

There is no way to square the BIA's opinion in this case with *Morales-Garcia*. As in *Morales-Garcia*, the statute at issue in Uppal's case requires no special trust relationship between the victim and the perpetrator. And it does not require that serious physical injury, much less death, result. Under § 268, it is sufficient to "endanger the life of" the victim, even if the victim sustains no bodily injury at all. *See Cuerrier*, 2 S.C.R. 371, ¶ 95.

Nor can the BIA's conclusion with respect to § 268 find support in the context of non-assault cases in which the BIA and courts of appeal have held that certain endangerment crimes constitute a CIMT even without resulting injury. This line of cases requires actual knowledge of a factor indicating risk of harm and conscious disregard of it, whereas § 268 requires only negligence. In *Marmolejo-Campos v. Holder*, for example, we held, after applying the modified categorical approach, that a conviction for driving or physically controlling a car while under the influence and with a suspended or restricted license constituted a CIMT. 558 F.3d at 917. However, we emphasized that the petitioner had "actual knowledge" that his license was invalid at the time of his crimes, and so demonstrated a subjectively culpable mental state. *Id.* at 913 n.12; *see also Keungne v. U.S. Att'y Gen.*, 561 F.3d 1281, 1286-87 (11th Cir. 2009); *Knapik v. Ashcroft*, 384 F.3d 84, 90 n.5 (3d Cir. 2004); *Matter of Lopez-Meza*, 22 I. & N. Dec. 1188, 1194, 1196 (BIA 1999), *rejected on other grounds by Hernandez-Martinez v. Ashcroft*, 329 F.3d 1117, 1118-19 (9th Cir. 2003). In contrast, § 268 requires only that the risk of harm resulting from the assault be "objective[ly] fores[eeable]," [1994] *R. v. Godin*, 2 S.C.R. 484, ¶ 2, not that the perpetrator actually have subjective knowledge of a factor indicating risk to another.

**[6]** Given these considerations, this case does not fall within the scope of *Franklin*, in which the unintended result was death; the special factor assault cases; or the endangerment cases requiring actual knowledge and conscious disre-

gard of the risk of harm. And outside of these exceptions, the BIA's case law uniformly indicates that an assault statute requiring only general intent cannot be categorically a CIMT. For example, in *Matter of Muceros*, A42-998-610 (BIA May 11, 2000) (index decision),[4] the BIA held that a conviction under California Penal Code section 243(d) for "battery . . . [in which] serious injury is inflicted" is not categorically a CIMT, because

> the level of intent involved only extends to touching the victim. No evil intent is required. The victims are not a specially protected class of persons or those who have a special relationship to the perpetrator. . . . We recognize the argument that the element of "serious bodily injury" presents an aggravating factor which elevates the respondent's crime to one involving moral turpitude. [But] [w]e adopt the reasoning of the California Courts in this regard, which have held that "[s]ince section 243 does not require an intention to do any act which would be judged to be evil by generally accepted community standards of morality, battery is not a crime of moral turpitude [for impeachment purposes] even though it may unintentionally result in serious bodily injury."

*Id.* at *5-*6 (internal citation omitted). Similarly, in *Matter of Solon*, the BIA gave dispositive significance to the distinction between general and specific intent in holding that a New

---

[4]All decisions designated to serve as precedent are published in bound volumes of the reporter entitled *Administrative Decisions Under the Immigration & Nationality Laws of the United States* (or "I. & N. Dec."). Separately, the Executive Office of Immigration Review periodically compiles certain unpublished decisions as so-called "indexed decisions," which are meant to serve as useful but non-binding guidance for EOIR staff. *See* BIA PRAC. MAN., Ch. 1.4(d) (rev. July 30, 2004), *available at* http://www.usdoj.gov/eoir/vll/qapracmanual/pracmanual/chap1.pdf. Indexed decisions are, nevertheless, non-precedential.

York conviction for assault in the third degree is categorically a CIMT:

> [S]ection 120.00(1) of the revised New York Penal Law . . . provides that a person is guilty of assault in the third degree when, "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person." . . . [The statute] requires "intent to cause physical injury." . . . Thus, the statute under which the respondent was convicted requires the specific intent to cause physical injury, as opposed to the general intent associated with simple assault. Therefore, the inclusion of the specific intent element distinguishes third-degree assault under section 120.00(1) of the New York Penal Law from the general-intent simple assaults, which are not considered to involve moral turpitude.

24 I. & N. Dec. 239, 243-44 (BIA 2007) (internal citations omitted).

This Court, too, has taken note of the distinction between general and specific intent in the assault and battery contexts. *See Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1059-61 (9th Cir. 2006) (holding that a conviction under a domestic battery statute that applied to a wide range of relationships and required neither injury nor an intent to injure did not categorically qualify as a crime involving moral turpitude); *Grageda v. I.N.S.*, 12 F.3d 919, 922 (9th Cir. 1993) (holding that "when a person willfully beats his or her spouse severely enough to cause 'a traumatic condition,' he or she has committed an act of baseness or depravity contrary to accepted moral standards [and has categorically committed a crime involving moral turpitude]" and noting that this "conclusion follows from *Guerrero de Nodahl*[, 407 F.2d at 1406,] because the injurious act under section 273.5(a) must be willful, meaning that the person intended to cause the harm"); *cf. Morales-Garcia*, 567 F.3d at 1066 n.5 (noting that "*Grageda*

interpreted the statute to require that the defendant 'intended to cause the harm,' although later California cases appear to require only the *general* intent to commit the act that results in injury[ ]" (internal citation omitted) and expressing no opinion on whether general intent would be sufficient).

**[7]** As a result, under the BIA's case law and our own, an assault statute *not* involving a specific intent to injure or a special trust relationship and *not* requiring that the assault cause death or even serious bodily injury cannot qualify as a categorical CIMT.

## Conclusion

**[8]** The BIA may have misconstrued the statutory elements. Whether it did or not, it applied a CIMT analysis inconsistent with our case law and its own. We therefore grant the petition and remand for application of the modified categorical approach. Of course, the BIA may also reach on remand the immigration fraud issue it has not yet addressed.

**GRANTED** and **REMANDED**.