NATHANIEL F. SMITH AND WIFE, AND OTHERS, *vs.* WILSON E. PROTHRO AND OTHERS.

The defendants, executors of P., sold in January, 1865, chattels of their testator for one half cash, and for the balance received notes from the purchasers at one and two years, payable in "current funds." The purchases were made with reference to Confederate currency; and, in 1866, the executors settled with the purchasers at one-tenth the price at which the chattels were bid off, receiving payment in national currency. This settlement was made in entire good faith, and the executors realized more than the value of the Confederate currency at the date of the purchases: *Held,* That the executors were not liable to the legatees of the testator for the amounts of the notes, but only for the amounts they received.

Under the Ordinance of 1865, evidence is admissible to show that the parties to a note, payable in "current funds," dealt with reference to Confederate currency; and, upon such evidence, the amount of the note may be reduced so as to effect substantial justice between the parties.

BEFORE PLATT, J., AT BARNWELL, ——— TERM, 1870.

This was an appeal from a decree of the Circuit Court, made upon an appeal from the Probate Judge.

The case is stated in the judgment of this Court.

*Finley*, for appellants, cited *Rutland* vs. *Copes*, 15 Rich., 84; *Thorington* vs. *Smith*, 8 Wal., 1; *Austin* vs. *Kinsman*, 13 Rich. Eq., 259; *Craig* vs. *Pervis*, 14 Rich. Eq., 150; 2 Story Eq., § 1272; *Hext* vs. *Porcher*, 1 Strob. Eq., 170; *Boggs* vs. *Adger*, 4 Rich. Eq., 410; *Wagner* vs. *Thompson*, 1 DeS., 94; *Tuveau* vs. *Ball*, 1 McC. Ch., 450; *Darrell* vs. *Darrell*, 3 DeS., 241; *Chappel* vs. *Brown*, 1 Bail., 528; *Martin* vs. *Jeffcoat*, 10 Rich. Eq., 128; *McCall* vs. *Peachey*, 3 Mumf. R., 288; *Meecher* vs. *Vanderver*, 3 Green R., 392; *Swicard* vs. *Wilson*, 2 Mill, 218.

——————————, contra.

May 23, 1871.   The opinion of the Court was delivered by

MOSES, C. J.   The controversy here is not between the executors
and the purchasers at the sale of the 31st of January, 1865.   The
notes which were given in consideration of the articles then bought
have been satisfied.   There is no fraud or mistake alleged, the exis-
tence of which would open the transactions between the vendors
and vendees, nor is the bill framed with a view to that end.

It is brought for an account against the executors of the late
Evan Prothro, on behalf of the infant children of Hickson N.
Prothro, (a son of the testator, who pre-deceased him,) and the point
of dispute arises out of the following facts : A sale of the personal
estate of the testator was made by his executor on the day named,
of which, according to the statement of the counsel for the appel-
lants conceded by the Circuit Judge in his decree, " the terms were
one-half cash, the balance on a credit of one and two years, with
interest from day of sale, payable in current funds, with the privi-
lege on the part of the purchaser to pay all in cash."

It is admitted " that the property then sold was bid off at Con-
federate rates, and that the cash payments, which in some cases em-
braced the whole amount of the said bids, were made in Confederate
currency."   In 1866, the executors, in view of the fourth Section
of the ordinance of the State Convention adopted on 27th Septem-
ber, 1865, acting on the advice of counsel, that under its provisions
the true measure of the indebtedness on the notes taken for pur-
chases at the sale, in conformity with the prescribed terms, was *the
real value in good money* of the articles so sold at the time, proceeded
to effect an adjustment of the notes by a careful examination of the
account sales, and a just estimate of the value of the property sold,
procuring for this purpose the assistance of several gentlemen con-
versant with such matters, and it was determined that in the settle-
ment to be had, each debtor should pay one-tenth of the price at
which the articles were purchased, the payment to be made in
National currency.   Such arrangement was accepted by the execu-
tors, and for the amount thereon received they were ready to ac-
count.   The plaintiffs object to this standard, and contend " that
the whole amount of the credit part of the said purchases should be
paid in funds *current* at the expiration of the credit, dollar for dol-
lar, and exempt from any scaling process under the ordinance of the
Convention or otherwise."   The case was referred to the Probate
Judge, who sustained the construction contended for by the defend-
ants, but His Honor the Circuit Judge decreed his ruling to be

erroneous, and his judgment is made the subject of appeal to this Court.

It is manifest that the learned Judge determined the liability of the executors by his construction of the words which expressed the character of the "funds" in which the notes were to be paid.

That, however, is far from being the only question involved in the case presented by the brief. It would not follow as a matter of course that the executor must be liable if he settled, by adjustment or arrangement, a debt due him in his representative capacity, for less than the amount which he possibly may have recovered at law, particularly where the extent of the recovery was a matter of doubt. That would depend on the circumstances of the particular transaction, and very much on his honest belief that his act would tend to the advantage of the estate, or that the probable chances of gain in its favor would countervail those of loss to its prejudice. No one would undertake to say that, in 1866, there did not prevail much doubt as to the value of notes of this description given at the time these were executed. Whether, being within the period fixed by the ordinance, the Courts might hold them referable to it, or whether, so holding, regard would be had to the value of the consideration, or to that of the money *current* at the time they were drawn, was then a matter of much doubt, even among the most learned of the profession. If the Courts had adjudged that the value of the money must be the standard, then the settlement which these executors made was for the benefit of the estate, for they received one-tenth of the whole amount when Confederate money, at the date of the transaction, compared with lawful money of the United States, was as 24 to 1. If, on the other hand, the rule had been established that regard must be had to the value of the articles at the time of the sale, then the estate has lost nothing.

As the opinion of this Court is against the conclusion of the Circuit Judge, we will confine our comments to the ground on which he rested it. Questions arising on contracts entered into during the late war have been submitted in so many forms, that it is not necessary, specifically, to refer to the decision which has been made on each of them. The general principle which has guided the judgment of the Court, was to ascertain the intention of the parties, when this could be collected from the terms of the agreement, subject to the effect of such testimony as the ordinance recognized as competent.

The words of the ordinance are so general that they embrace

every action arising on any contract whatsoever, whether under seal or parol, written or oral, made between 1st January, 1862, and the 15th of August, 1865. In all of them "it shall be lawful for either party to introduce testimony shewing the true value and real character of the consideration of such contract, so that, regard being had to the particular circumstances of the case, such verdict or decree may be rendered as will effect substantial justice between the parties." As was said, in *Rutland* vs. *Copes*: "It would have been difficult for the Convention to have used language of a more comprehensive character."

The object of the Convention was to carry out the intention of the parties, and to provide a rule of evidence which might aid in conducing to that end. In every contract (made within the prescribed period) the intention was to govern, when it could be ascertained, and the ordinance afforded an additional facility for its discovery. Does an exception prevail where the notes are expressed to be payable "in current funds?" It is not necessary to consider whether, in legal acceptation, the use of such words is regarded as referring to funds current at the date of the transaction, or at the time of payment. Conceding, for the argument, that they are to be understood from their face as referring to the currency which may prevail when they fall due, still, if by competent evidence it can be shown that they were understood as referring to that which prevailed at the time of the contract, the intention, when ascertained, must prevail as the rule which the parties had adopted, and by which they were to be governed. On the one hand, the maker might be allowed to show, by satisfactory proof, that gold or silver coin was not intended to be the medium of payment, and, on the other, the payee might show that if, at the expiration of the credit, the Confederate money, the only circulating medium at the time of the contract, should still further depreciate in value, he was not to be held bound to accept it as satisfaction. There is, at least, reciprocity in the rule.

It is objected that the ordinance could no more apply to a note payable "in current funds," than if expressed to be payable "in gold." This assumes that, in a note of the latter character, testimony under the ordinance could not be admitted to show "the true value and real character of the consideration of such contract at the time it was made, so that regard being had to the particular circumstances of each case, such verdict or decree may be rendered as will effect substantial justice between the parties."

In the opinion of the Court in *Rutland* vs. *Copes*, 15 Rich., 115, it is said : " If the contract in question had specified the payment of so many dollars in gold, it would be difficult to perceive how, under the ordinance, testimony could be excluded as to 'the true value and real character of the consideration.' What weight the jury might be bound to give to such evidence, when introduced, is another question. Although a note might be so payable, yet in order to effect 'substantial justice between the parties,' it might be competent and important to inquire into the true value and real character of the consideration of the contract at the moment it was made, for it may have been based upon a gold standard fixed at the time, either in reference to United States or Confederate currency, or to the value of gold when the paper fell due, or its market value at the end of the war."

In *Bobo* vs. *Goss* (1 S. C., N. S., 262) this Court set aside the verdict because the presiding Judge, after admitting the evidence to shew the true value and real character of the consideration, directed the jury " to reduce the amount appearing by the face of the note to be due, to the standard of Confederate money at the date." He did not leave it to them to decide " so that substantial justice" should be effected, but submitted an arbitrary rule, founded on his own conception, for their direction. The testimony, too, proved that the consideration, so far from being one of Confederate money, was founded on a basis of a totally different character. The Court, in its opinion in that case, said that "as the declared purpose of the ordinance was to secure such verdict or decree as will effect substantial justice between the parties, any verdict finding less than the true amount for which they had expressly stipulated would fall short of that substantial justice which they had established for themselves, and by which they had agreed to be regulated by the very language of their contract."

In *Thorington* vs. *Smith*, 8 Wal., 14, the evidence was allowed, for the same reason that the ordinance authorized its admission, to shew the intention, in order that "justice may be done between the parties;" and *Bronson* vs. *Rodes*, and *Butler* vs. *Harwitz*, 7 Wallace, 229, 258, gave effect to such intention, to be ascertained from all the circumstances; and yet, in both these cases, the written obligation was to pay in gold and silver coin.

If it were necessary for the purpose in this case, it might be shewn that a wide difference exists as indicative or expressive of intention between a promise to pay in gold and silver coin, and one to pay in

current funds. In the first, the mode of payment may be said to refer to a medium of definite and known existence in a commodity having value in itself, while in the latter, the nature of the "funds" depending on a paper currency changing from time to time would be uncertain in value as compared to gold, the recognized standard of all values.

We do not perceive any difference between this case and that of *Craig, et ux.*, vs. *Pervis, et al.*, 14 Rich. Eq., 150, or why the rule there enforced should not be applied here. In that case the note was given, in 1864, for $1,000, payable at the end of the war, without interest. Parol evidence was admitted to shew that, when due, it was to be paid in whatever money might then be current; and it was in consideration of that fact that no interest was charged. The Chancellor held that, notwithstanding the proof of the funds in which it was to be paid, it was subject to the provisions of the Ordinance, and the Court of Appeals sustained the decree, fixing the amount in favor of the plaintiff at $81.63, with interest from the date of the note.

In *Harmon* vs. *Wallace*, (ante, p. 208,) the single bill declared on was dated in 1863, payable in January, 1866, "in current funds." As no objection was made, on the trial, to the introduction of testimony to shew the true value and real character of the consideration, the question of the competency of the evidence was not directly involved. In the opinion pronounced here the case was referred to as one well calculated to shew the necessity of sometimes looking beyond the mere force of the language employed to discover the purpose and object of the parties through the words which they used to indicate their agreement. The mode of accomplishing this was provided by the Ordinance.

In the case in hand the proof was conclusive that the United States currency was not the medium of payment intended by the sellers and purchasers. The articles were bought at " Confederate prices," (to use the language of the brief,) and the right was reserved to the bidders to pay, if they pleased, in the then much depreciated currency.

The adjustment made by these executors, under the circumstances, can be viewed in no other light than as fair and reasonable, and in good faith to the trust confided to them.

It is ordered and adjudged that the decree of the Circuit Judge be set aside, and the case remanded to the Court of Common Pleas

for the County of Barnwell for such orders as may be necessary to give effect to the judgment now pronounced.

*Wright*, A. J., concurred.

WILLARD, A. J. I do not deem it necessary to a decision of the present case to consider the force or effect of the ordinance of 1865. No question is raised as to the admissibility of evidence to shew what was the standard of value with reference to which the price of the property was adjusted. It is admitted that Confederate currency constituted this standard.

We have already held that contracts made with reference to Confederate currency, though maturing after such currency passed out of use, are to be treated in the same manner as contracts that matured while such currency was in general use.—*Neely* vs. *McFadden*, (ante, p. 169.)

The fact that the contract was made payable at a future date in " current funds " does not change the rights of the parties in this respect. The object of this clause was to fix the character of the commodity by means of which the obligation of the contract might be discharged, while the present question concerns the nature and extent of the obligation itself. Under the decision in *Neely* vs. *McFadden*, the true question is, what the parties meant by the terms employed by them under which they expressed the nature and extent of the obligation assumed. In the present case this is ascertained by the admission that the sale was effected according to the value of Confederate money.

The only question made being that the contract of sale should have been enforced with reference to the value of lawful money, the decree below should be reversed.