# MATTER OF FRANKLIN

## In Deportation Proceedings

## A-40191863

*Decided by Board September 13, 1994*

A conviction for involuntary manslaughter pursuant to sections 562.016(4) and 565.024(1) of the Missouri Revised Statutes constitutes a crime involving moral turpitude within the meaning of section 241(a)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(2)(A)(i) (Supp. V 1993), where Missouri law requires that the convicted person must have consciously disregarded a substantial and unjustifiable risk, and that such disregard constituted a gross deviation from the standard of care that a reasonable person would exercise in the situation. *Matter of Ghunaim*, 15 I&N Dec. 269 (BIA 1975); *Matter of Lopez*, 13 I&N Dec. 725 (BIA 1971); *Matter of Sanchez-Marin*, 11 I&N Dec. 264 (BIA 1965); and *Matter of B-*, 4 I&N Dec. 493 (BIA 1951), modified. *Matter of Szegedi*, 10 I&N Dec. 28 (BIA 1962), overruled.

CHARGE:

Order: Act of 1952—Sec. 241(a)(1)(D)(i) [8 U.S.C. § 1251(a)(1)(D)(i)]—Conditional resident status terminated

Lodged: Act of 1952—Sec. 241(a)(2)(A)(i) [8 U.S.C. § 1251(a)(2)(A)(i)]—Crime involving moral turpitude

ON BEHALF OF RESPONDENT:
Henri J. Watson, Esquire
Watson & Dameron
2500 Holmes
Kansas City, Missouri 64108-2743

ON BEHALF OF SERVICE:
Joseph R. Dierkes
General Attorney

BY: Dunne, Acting Chairman; Vacca and Heilman, Board Members; Holmes, Alternate Board Member

The respondent has appealed from a decision of an immigration judge dated March 8, 1994, which found the respondent to be deportable as charged and ordered her deported to the Philippines. The appeal will be dismissed.

The respondent is a 28-year-old native and citizen of the Philippines. She was admitted to the United States as a lawful permanent resident on a conditional basis on December 15, 1987. On August 3, 1992, the respondent was found guilty in the Circuit Court of Jackson

County, Missouri, of involuntary manslaughter, a class C felony, in violation of section 565.024 of the Missouri Revised Statutes. The respondent was sentenced to a 3-year term of imprisonment for this conviction.

On May 21, 1993, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing (Form I-221), charging the respondent with deportability pursuant to section 241(a)(1)(D)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(D)(i) (Supp. V 1993), as an alien whose conditional permanent resident status has been terminated. On February 14, 1994, the Service lodged the additional charge that the respondent is deportable under section 241(a)(2)(A)(i) of the Act because she has been convicted of a crime involving moral turpitude committed within 5 years of entry.

The immigration judge found the respondent to be deportable under both charges and ordered her deportation to the Philippines. While the respondent's appeal was pending, the Service advised the Board that it was withdrawing the charge of deportability under section 241(a)(1)(D)(i) of the Act.

The sole issue on appeal is whether the respondent was properly found to be subject to deportation as an alien who has been convicted of a crime involving moral turpitude. The Service argues that the immigration judge's decision should be upheld, because he correctly concluded that the respondent is deportable from the United States as an alien who has been convicted of a crime involving moral turpitude. The respondent maintains in her brief on appeal that convictions for involuntary manslaughter traditionally have not been considered to involve moral turpitude, and that the deportation proceedings against her should accordingly be terminated.

Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. *See Matter of Danesh*, 19 I&N Dec. 669 (BIA 1988); *Matter of Flores*, 17 I&N Dec. 225, 227 (BIA 1980). Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude. *Matter of P-*, 6 I&N Dec. 795 (BIA 1955). Among the tests to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or a corrupt mind. *See Matter of Perez-Contreras*, 20 I&N Dec. 615 (BIA 1992); *Matter of Serna*, 20 I&N Dec. 579 (BIA 1992); *Matter of Short*, 20 I&N Dec. 136 (BIA 1989); *Matter of Flores, supra*, at 227. We stated the following in *Matter of Short, supra*: "In determining whether a crime involves moral turpitude, ... [t]he statute under

which the conviction occurred controls. If it defines a crime in which turpitude necessarily inheres, then the conviction is for a crime involving moral turpitude for the purposes of the deportation statute." *Id.* at 3.

The record reflects that the respondent was convicted under section 565.024(1) of the Missouri Revised Statutes, which provides as follows: "A person commits the crime of involuntary manslaughter if he ... [r]ecklessly causes the death of another person." Section 562.016(4) of the Missouri Revised Statutes provides, in turn, that "[a] person 'acts recklessly' or is reckless when he consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation."

In *Matter of Szegedi*, 10 I&N Dec. 28 (BIA 1962), the Board held that a conviction for "homicide by reckless conduct" under Wisconsin law was not a crime involving moral turpitude. The Board observed that the statute under which the alien was convicted did not require "a specific intent to kill" and further stated that "voluntariness or intent to commit the act or *some* act must exist before we can find that the crime involves moral turpitude." *Id.* at 34; *see also Matter of Gantus-Bobadilla*, 13 I&N Dec. 777 (BIA 1971), *modified*, *Matter of Wojtkow*, 18 I&N Dec. 111 (BIA 1981).

In *Matter of Medina*, 15 I&N Dec. 611 (BIA 1976), *aff'd sub nom. Medina-Luna v. INS*, 547 F.2d 1171 (7th Cir. 1977), the Board revisited the issue of whether criminally reckless conduct constituted a crime involving moral turpitude. In *Medina*, the alien had been convicted of aggravated assault in violation of Illinois law. Holding that the criminally reckless conduct defined by the Illinois "recklessness" statute provided the basis for a finding of moral turpitude, the Board construed the statute as follows:

> The person acting recklessly must *consciously* disregard a *substantial and unjustifiable* risk, and such disregard must constitute a *gross* deviation from the standard of care which a reasonable person would exercise in the situation. This definition of recklessness requires an actual awareness of the risk created by the criminal violator's action. While the Illinois recklessness statute may not require a specific intent to cause a particular harm, the violator must show a willingness to commit the act in disregard of the perceived risk. The presence or absence of a corrupt or vicious mind is not controlling.

*Id.* at 613-14.

Later, in *Matter of Wojtkow, supra*, the Board relied upon the holding in *Medina* to conclude that an alien's conviction for second degree manslaughter under the New York Penal Law constituted a crime involving moral turpitude. Quoting the New York statute, the

Board noted that a person is guilty of second degree manslaughter in New York if "'he recklessly causes the death of another person.'" *Matter of Wojtkow, supra*, at 112 n.1. The Board further observed that the definition of "recklessness" under New York law was the same as the definition under Illinois law that had been analyzed in *Medina. Id.* at 112-13.

We most recently addressed the issue of criminal recklessness as it relates to moral turpitude in *Matter of Perez-Contreras, supra*. We concluded there that a conviction for third degree assault under Washington law, where the alien had caused injury to the victim "with criminal negligence," was not a crime involving moral turpitude. *Id.* at 7. We emphasized that unlike *Wojtkow* and *Medina*, the alien's conviction in *Perez-Contreras* did not involve "the conscious disregard of a substantial and unjustifiable risk." *Id.* We thus concluded: "Since there was no intent required for conviction, nor any conscious disregard of a substantial and unjustifiable risk, we find no moral turpitude inherent in the statute." *Id.*

Returning to the facts before us, we find that the respondent's case is controlled by our decisions in *Wojtkow* and *Medina*. The respondent was convicted of involuntary manslaughter, which, under Missouri law, is defined as "[r]ecklessly caus[ing] the death of another person." *See Matter of Wojtkow, supra*, at 112 n.1. Moreover, Missouri's statutory definition of "recklessness" is essentially identical to the definitions which we construed in *Wojtkow* and *Medina*, i.e., a conscious disregard for a substantial and unjustifiable risk, where the disregard constitutes a gross deviation from the standard of care which a reasonable person would employ. Accordingly, because the statute under which the respondent was convicted requires that she acted with a "conscious disregard of a substantial and unjustifiable risk," the conclusion necessarily follows that she has been convicted of a crime involving moral turpitude. *Matter of Perez-Contreras, supra*, at 7; *see also Matter of Wojtkow, supra; Matter of Medina, supra.*

Finally, we note that the respondent relies heavily upon cases 'in which the Board stated generally that "voluntary manslaughter involves moral turpitude, although involuntary manslaughter does not." *Matter of Lopez*, 13 I&N Dec. 725, 726 (BIA 1971) (citation omitted); *see also Matter of Ghunaim*, 15 I&N Dec. 269, 270 (BIA 1975); *Matter of Sanchez-Marin*, 11 I&N Dec. 264, 266 (BIA 1965); *Matter of B-*, 4 I&N Dec. 493, 496 (BIA 1951). These decisions all preceded our holdings in *Wojtkow* and *Medina*, where we reexamined the question of whether criminally reckless behavior involved moral turpitude. Upon reviewing the statute under consideration in the present case, we find that a "black-letter" holding that convictions for involuntary manslaughter do not constitute crimes involving moral

turpitude is not workable. In view of the myriad state classifications for manslaughter convictions, one must analyze the specific statute under which the alien was convicted on a case-by-case basis in order to determine whether the conviction is for a crime involving moral turpitude. Accordingly, the precedent decisions cited above which contain the categorical statement that involuntary manslaughter is not a crime involving moral turpitude are hereby modified. The Board's decision in *Matter of Szegedi, supra,* at 34, holding that a conviction for "homicide by reckless conduct" was not a crime involving moral turpitude because the conviction did not require "a specific intent to kill," is hereby overruled.

The respondent's deportability as an alien convicted of a crime involving moral turpitude which was committed within 5 years of entry has been established by clear, unequivocal, and convincing evidence. *Woodby v. INS,* 385 U.S. 276 (1966). The respondent's appeal from the decision of the immigration judge ordering her deportation to the Philippines will accordingly be dismissed.

**ORDER:** The appeal is dismissed.