**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JASPAL SINGH UPPAL,

*Petitioner,*

v.

ERIC H. HOLDER, Jr., Attorney
General,

*Respondent.*

No. 07-72614

Agency No.
A076-841-745

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 10, 2009—San Francisco, California

Filed August 11, 2009

Before: David R. Thompson, Marsha S. Berzon and
N. Randy Smith, Circuit Judges.

Opinion by Judge Thompson;
Partial Concurrence and Partial Dissent by Judge Berzon

## COUNSEL

Martin Avila Robles, San Francisco, California, for the petitioner.

Tiffany Walters Kleinert, Assistant United States Attorney General, Washington, D.C., for the respondent.

## OPINION

THOMPSON, Senior Circuit Judge:

## OVERVIEW

Jaspal Singh Uppal, a native and citizen of India, petitions for review of the Board of Immigration Appeal's (BIA) order dismissing his appeal. Uppal contends the BIA erred in concluding that he had committed a crime which categorically involved moral turpitude, thus rendering him inadmissible at

the time of his adjustment of status, and subject to removal. Uppal also claims he was denied due process of law, and contends the BIA abused its discretion in handling his appeal. The petition for review is DENIED.

## BACKGROUND

Jaspal Singh Uppal, a native and citizen of India, entered the United States illegally around February 1, 1997, near Blaine, Washington. On July 31, 1998, he was granted asylum. On February 4, 2004, he was accorded status as a permanent resident.

On April 11, 2006, the Department of Homeland Security ("DHS") issued Uppal a Notice to Appear. The Notice charged Uppal as removable under 8 U.S.C. § 1227(a)(1)(A). DHS alleged Uppal was inadmissible at the time of his entry and/ or adjustment of status on two grounds: 1) he had been convicted of a crime involving moral turpitude, and 2) he attempted to obtain immigration benefits through fraud or misrepresentation of a material fact. 8 U.S.C. § 1182(a)(2)(A)(i)(I); 8 U.S.C. § 1182(a)(6)(C)(i).

The Notice alleged that on February 21, 1995, Uppal was convicted of aggravated assault in violation of § 268(2) of the Criminal Code of Canada. As a result, Uppal was allegedly deported from Canada to India. In his application for asylum, Uppal made no mention of this conviction or his status as a Canadian permanent resident.

Uppal filed a formal motion to terminate the removal proceedings. On January 9, 2007, without holding an evidentiary hearing, the IJ issued a final order denying Uppal's motion. The IJ held that, as a matter of law, Uppal's conviction under § 268 of the Criminal Code of Canada (on occasion hereafter "§ 268") constituted a categorical crime involving moral turpitude ("CIMT"). The IJ also concluded that Uppal had committed immigration fraud by concealing both the conviction

and his status as a Canadian permanent resident from U.S. immigration officials.

Uppal timely appealed the IJ's order to the BIA. In a one-panel-member unpublished decision, the BIA affirmed the IJ's order. The BIA undertook a de novo review of the moral turpitude issue, and concluded that the IJ was correct in concluding that a § 268 offense constituted a categorical crime involving moral turpitude which rendered Uppal inadmissible at the time of his adjustment of status. In light of this, the BIA found him removable and declined to reach the immigration fraud issue.

Uppal then timely filed this petition for review. The government moved for summary denial of the petition; we denied the motion.

## JURISDICTION

We have jurisdiction to review this final order of removal under 8 U.S.C. § 1252(a)(1). Though our jurisdiction to review orders of removal against "criminal aliens" is limited by 8 U.S.C. § 1252(a)(2)(C), we retain jurisdiction to review constitutional challenges and questions of law. 8 U.S.C. § 1252(a)(2)(C) and (D). Whether a crime involves moral turpitude is a question of law which is not subject to the jurisdiction-stripping provision of § 1252(a)(2)(C). *Nicanor-Romero v. Mukasey*, 523 F.3d 992, 996 (9th Cir. 2008), *overruled on other grounds by Marmolejo-Campos v. Holder*, 558 F.3d 903 (9th Cir. 2009).

## DISCUSSION

### I.  Does Uppal's conviction under § 268 of the Criminal Code of Canada constitute a "crime involving moral turpitude"?

To determine whether a petitioner's conviction constitutes a crime involving moral turpitude, the BIA looks first to the

statute itself, and applies the "categorical" inquiry adopted by the Supreme Court in *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). *Matter of Cristoval Silva-Trevino*, 24 I. & N. Dec. 687, 696 (A.G. 2008); *see also Marmolejo-Campos*, 558 F.3d at 912. This inquiry requires "categorical comparison of the elements of the statute of conviction to the generic definition of moral turpitude." *Nicanor-Romero*, 523 F.3d at 999 (internal quotation marks and citation omitted). If there is a "realistic probability, not a theoretical possibility" that § 268 would be applied to conduct that falls outside the generic definition of a crime involving moral turpitude, then the offense is not a categorical crime involving moral turpitude. *Silva-Trevino*, 24 I. & N. Dec. at 697-98.

Here, in a one-panel-member unpublished decision, the BIA held that Uppal's offense under § 268 of the Criminal Code of Canada constituted a categorical crime involving moral turpitude. We review the BIA's interpretation of the elements of § 268 de novo. *Marmolejo-Campos*, 558 F.3d at 907. The BIA "has no special expertise" or "special administrative competence to interpret the petitioner's statute of conviction," thus we owe no deference to the BIA on this issue. *Id.*

By contrast, when the BIA determines whether a specific offense constitutes a CIMT, "it assesses the character, gravity, and moral significance of the conduct, drawing upon its expertise as the single body charged with adjudicating all federal immigration cases." *Marmolejo-Campos*, 558 F.3d at 910. This is "precisely the type of agency action" entitled to deference under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and *Skidmore v Swift & Co.*, 323 U.S. 134 (1944). *Id.*

Thus, our review of the BIA's determination that § 268 constitutes a CIMT is "governed by the same traditional principles of administrative deference we apply to the BIA's interpretation of other ambiguous terms in the INA." *Id.* at

911. Because the BIA's unpublished decision does not bind future parties, or rely on any published BIA decision interpreting § 268, we accord *Skidmore* deference to the BIA's determination that § 268 constitutes a categorical CIMT. *Id.*

## A.   Elements of § 268

**[1]** With this framework in mind, we turn to our de novo review of the elements of § 268. A person commits "aggravated assault" under § 268 of the Canada Criminal Code if he "wounds, maims, disfigures, or endangers the life of" another. Canada Criminal Code, R.S.C., ch. C-46 § 268(1) (1985). Uppal contends that § 268 encompasses negligent and unintentional conduct, and thus cannot qualify as a categorical crime involving moral turpitude.

**[2]** To discern § 268's mens rea requirement, we must read § 268 together with § 265, which establishes a base-level mens rea requirement for all assault offenses under the Criminal Code of Canada:

> A person commits an assault when
>
> (a) without the consent of another person, he applies force intentionally to that other person, directly or indirectly;
>
> (b) he attempts or threatens, by an act or a gesture, to apply force to another person, if he has, or causes that other person to believe on reasonable grounds that he has, present ability to effect his purpose; or
>
> (c) while openly wearing or carrying a weapon or an imitation thereof, he accosts or impedes another person or begs.

Canada Criminal Code, R.S.C., ch. C-46 § 265(1)-(2) (1985); *R. v. Currier*, [1998] 2 S.C.R. 371, ¶¶ 94-95. Read together,

§§ 265 and 268 establish that "[t]he mens rea for aggravated assault is the mens rea for assault (intent to apply force intentionally or recklessly or being willfully blind to the fact that the victim does not consent) plus objective foresight of the risk of bodily harm[.]" *R. v. Williams*, [2003] 2 S.C.R. 134, ¶ 22. Thus, we agree with the BIA that an offense under § 268 "cannot be committed negligently or carelessly."

**[3]** We also agree with the BIA's conclusion that § 268's actus reus requires "inflict[ion] of significant injury." Section 268 only applies to acts which either "endanger[ ]" the life of the victim, or "wound[ ], maim[ ], or disfigure[ ]" the victim, as the BIA correctly stated. Section 268(1). Contrary to the dissent's suggestion, the BIA never concluded that all acts falling within § 268 require proof of physical harm. Rather, the BIA stated that the statute requires "willfulness of action which inflicts significant injury." Taken in context, this statement expresses the Board's conclusion that § 268's actus reus "involves some aggravating dimension that significantly increases the culpability of the offense." The Board explicitly recognized that the actus reus requires either "wounding, maiming, disfiguring *or endangering the life of the victim.*" (emphasis added)

**[4]** Though the dissent may disagree with the Board's ultimate conclusion that § 268 contains aggravating dimensions which significantly increase the culpability of the offense as compared to a simple assault or battery charge, it is clear that the Board correctly identified and interpreted § 268's statutory elements.

## B. The BIA's Decision

Next, we turn to the BIA's decision. The BIA concluded that Uppal's offense "plainly qualifies" as a CIMT. As discussed above, this determination is entitled to *Skidmore* deference. *Marmolejo-Campos*, 558 F.3d at 911. The measure of deference due to the BIA's decision under *Skidmore* varies

"depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it the power to persuade, if lacking power to control." *Skidmore*, 323 U.S. at 140.

Consistent with both BIA and our own precedent, the Board undertook a de novo review of the IJ's decision, and correctly applied the categorical analysis set forth in *Duenas-Alvarez* by comparing the statutory elements of Uppal's offense against a general definition of moral turpitude derived from BIA case law.[1] *See, e.g., Silva-Trevino*, 24 I. & N. Dec. at 696.

**[5]** To determine whether § 268 was morally turpitudinous, the BIA examined the statute's mens rea and actus reus. Previous BIA and Ninth Circuit decisions identify these two elements as important factors to be considered when evaluating whether a crime rises to the level of a morally turpitudinous offense. *In re Solon*, 24 I. & N. Dec. 239, 242 (BIA 2007) ("[I]n the context of assault crimes, a finding of moral turpitude involves an assessment of both the state of mind and the level of harm required to complete the offense."); *see also Nicanor-Romero*, 523 F.3d at 998 (identifying the mens rea and actus reus as "important factors"). Neither element, taken alone, is outcome determinative; rather, it is the combination of the two that determines whether a crime involves moral turpitude. *Solon*, 24 I. & N. Dec. at 242; *see also Grageda v. INS*, 12 F.3d 919, 922 (9th Cir. 1993) ("[I]t is *the combination* of the base or depraved act *and* the willfulness of the action that makes the crime one of moral turpitude.") (emphasis added).

---

[1]As we noted in *Marmolejo-Campos*, to date, the Board's definition of "moral turpitude" has been so vague and generalized as to render *Chevron* deference meaningless. *Marmolejo-Campos*, 558 F.3d at 910. Accordingly, we have relied on our own definition of the term. *Id.* The two definitions do not "differ materially," *id.*, and any difference is irrelevant to the present case.

Neither the Attorney General nor the BIA has specified what degree of scienter is generally required for a CIMT. *Marmolejo-Campos*, 558 F.3d at 924 (J. Berzon, dissenting). The BIA has, however, articulated a more specific standard to be applied in assault cases, a "sliding scale" that measures both the statute's mens rea and the harm inflicted:

> [I]ntentional conduct resulting in a meaningful level of harm, which must be more than mere offensive touching, may be considered morally turpitudinous. However, as the level of conscious behavior decreases, i.e., from intentional to reckless conduct, more serious resulting harm is required in order to find that the crime involves moral turpitude. Moreover, where no conscious behavior is required, there can be no finding of moral turpitude, regardless of the resulting harm.

*Solon*, 24 I. & N. Dec. at 242. This sliding scale provides a workable and logical standard by which assault offenses can be measured on a case-by-case basis.

Section 268 may only be applied to intentional conduct which "wounds, maims, disfigures, or endangers the life of" another. Section 268(1). Measured against *Solon*'s sliding scale, § 268 may be considered morally turpitudinous because it requires "intentional conduct" that results in a "meaningful level of harm." *Solon*, 24 I. & N. Dec. at 242. Accordingly, the BIA's decision is consistent with prior BIA precedent on point.

Though the BIA has at times found that assault offenses arising out of reckless conduct are crimes involving moral turpitude, we have held that only assault offenses arising from intentional acts may be termed morally turpitudinous. *Compare Matter of Wojtkow*, 18 I. & N. Dec. 111 (BIA 1981), *and Matter of Medina*, 15 I. & N. Dec. 611 (BIA 1976), *with Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1165-66 (9th

Cir. 2006). While it is difficult to draw generalizations about moral turpitude case law, we have also tended to recognize assault crimes as morally turpitudinous where the statutes have required proof of harm. *See, e.g., Fernandez-Ruiz*, 468 F.3d at 1167 (holding that an assault statute which "contain[ed] absolutely no element of injury whatsoever" was not a categorical crime involving moral turpitude); *Galeana-Mendoza v. Gonzales*, 465 F.3d 1054, 1060 (9th Cir. 2006); *Guerro de Nodhal v. Immigration and Naturalization Service*, 407 F.2d 1405, 1406-07 (9th Cir. 1969) (holding that a statute requiring "cruel and inhuman corporal punishment or injury resulting in a traumatic condition" was a categorical CIMT); *Grageda*, 12 F.3d at 921 (holding that a statute requiring "corporal injury resulting in a traumatic condition" was a categorical CIMT).

**[6]** Section 268 requires an intent to take an action which, viewed objectively, subjects another person to the risk of bodily harm. *Williams*, 2 S.C.R. at ¶ 22. The statute also requires harm in fact: to convict an offender under § 268, the Crown must show that the victim has either been "wound[ed], maim-[ed], [or] disfigur[ed]," or that her life was "endanger[ed]." Section 268(1). Thus, the BIA's determination that § 268 constitutes a crime involving moral turpitude is also consistent with our moral turpitude case law.

Uppal nonetheless contends that since § 268 only requires the intent to act, not the intent to harm, offenses under this section lack the necessary evil or malicious intent required of crimes of moral turpitude. Yet the BIA has recognized that aggravated assault may involve moral turpitude even in the absence of an "explicit element of evil intent." *In re Lopez-Meza*, 22 I. & N. Dec. 1188, 1193 (BIA 1999). We have also questioned the value of the oft-cited "evil intent" requirement:

> If the crime is a serious one, the deliberate decision to commit it can certainly be regarded as the manifestation of an evil intent. Conversely, if the crime is

> trivial, even a deliberate intent to commit it will not demonstrate an intent so 'evil' as to make the crime one of moral turpitude.

*Galeana-Mendoza*, 465 F.3d at 1061 (quoting *Mei v. Ashcroft*, 393 F.3d 737, 741 (7th Cir. 2004)). Intentional conduct can be morally turpitudinous if accompanied by a "meaningful level of harm," regardless of whether the assault statute contains a general or a specific intent requirement. *Solon*, 24 I. & N. Dec. at 242.

Nor does our decision in *Grageda* require a different result, as Uppal argues. In *Grageda*, we held that offenses under § 273.5 of the California Penal Code ("CPC") constituted categorical crimes involving moral turpitude, because "the injurious act under [the statute] must be willful, meaning that the person intended to cause harm." *Grageda*, 12 F.3d at 922. Yet, as we later pointed out in *Galeana-Mendoza*, in *Grageda* we may have mischaracterized the California statute's mens rea requirement. *Galeana-Mendoza*, 465 F.3d at 1060 n.10. California courts have interpreted CPC § 273.5 to require "only the mens rea of intending to do the assaultive act," not the specific intent to harm. *Id.* It appears, then, that CPC § 273.5's mens rea requirement is very similar to the mens rea of the statute at issue here: both require an intent to act, but not an intent to harm. In fact, § 268's mens rea requirement is slightly more robust, since it also requires the objective foresight of bodily harm.

[7] While some element of intent is a prerequisite to finding a crime involving moral turpitude, an intent to harm, per se, is not necessarily required. *Solon*, 24 I. & N. Dec. at 242. Section 268 requires an intent to take an action which, objectively viewed, would endanger another's life or result in serious bodily injury. The deliberate intent to take an action with such grave consequences "can certainly be regarded as the manifestation of an evil intent." *Galeana-Mendoza*, 465 F.3d at 1061. The fact that the statute does not require a subjective

intent to harm does not preclude a § 268 offense from qualifying as a categorical CIMT.

**[8]** Nor does the possibility that a § 268 offense may not result in actual physical harm to the victim preclude the offense from qualifying as a categorical CIMT, as the dissent argues. An offense which places a victim in mortal danger is still more analogous to the statutes at issue in *Grageda* and *Guerro de Nodhal* than to those in *Fernandez-Ruiz* and *Galeana-Mendoza*. Measured on the *Solon* sliding scale, the harm caused by an intentional act which endangers the life of another is serious enough to render § 268 a categorical CIMT. *Solon*, 24 I. & N. Dec. at 242 (holding that "intentional conduct" that results in a "meaningful level of harm" is a CIMT).

Perhaps the grave nature of offenses falling under § 268 is best illustrated by the cases themselves. The dissent mistakenly suggests that the term "wounds" in § 268 could encompass minor injuries, such as a "finger cut requiring only a band-aid." We disagree. To interpret the term "wounds," the court should look to the Canadian court decisions applying the statute. *See, e.g., Nicanor-Romero*, 523 F.3d at 1000 (examining California case law to determine what conduct satisfied the actus reus requirement of § 647.6(a)); *Galeana-Mendoza*, 465 F.3d at 1054 ("[I]n determining the categorical reach of a state crime, we consider not only the language of the state statute, but also the interpretation of that language in judicial opinions.") (quoting *Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1016 (9th Cir. 2006)).

The dissent's contention that § 268 encompasses trivial injuries is graphically contradicted by the decisions interpreting and applying the statute. In one case, the offender shook her 31-day-old son so vigorously that he suffered subdural hematomas and a fractured ankle and knee. *R. v. McCauley*, [2007] 2007 CarswellOnt 2551. In another, an 18-year old shot a 12-year old boy, causing serious injury. *R. v. Boachie*, [2007] 2007 CarswellOnt 6897. In yet another, a man stabbed

his co-worker repeatedly in the face and the head, ceasing only when another co-worker intervened, and broke a chair over his back. *R. v. Sultan*, [2007] 2007 CarswellBC 1351. The dissent has not cited a single case in which § 268's actus reus requirement was satisfied by conduct which did not involve this sort of grievous bodily harm.

**[9]** Finally, we reject the dissent's contention that § 268 cannot qualify as a categorical CIMT absent some additional aggravating factor, such as a trust relationship between the perpetrator and the victim. The BIA specifically found that § 268 "involved some aggravating dimension that significantly increase[d] the culpability of the offense" — namely, the "wounding, maiming, disfiguring or endangering the life of the victim." The BIA concluded that this enhanced actus reus distinguished § 268 from simple assault and battery offenses. As discussed extensively above, the BIA's conclusion is consistent with its prior precedent, and with our own case law. Furthermore, the BIA's decision is thorough, well-reasoned and persuasive. Accordingly, under *Skidmore*, we defer to the BIA's determination that an offense under § 268 constitutes a categorical crime involving moral turpitude.

## II. Did the IJ violate Uppal's due process rights and the Immigration and Nationality Act in issuing a final order of removal against Uppal without holding a scheduled contested hearing on the merits?

Uppal contends the IJ denied him due process of law by issuing a final order of removal against him without first holding an evidentiary hearing to address the contested issues raised in his motion to terminate. Specifically, Uppal contends that he was prejudiced by the inability to challenge the authentication of his Canadian record of conviction, and the evidence pertaining to the charge of fraud and misrepresentation.

We review de novo claims of due process violations in removal proceedings. *Burgos-Abril v. INS*, 58 F.3d 475, 476

(9th Cir. 1995). Under 8 U.S.C. § 1229a, an alien is afforded certain rights, including "the reasonable opportunity to examine the evidence against [him], to present evidence on [his] own behalf, and to cross-examine witnesses presented by the Government[.]" 8 U.S.C. § 1229a(b)(4)(B). "In general, however, an alien 'has been denied a full and fair hearing which due process provides only if the thing complained of causes the alien to suffer some prejudice.' " *Burgos-Abril*, 58 F.3d at 476 (quoting *Nicholas v. INS*, 590 F.2d 802, 809 (9th Cir. 1979)). To show prejudice, the alien must show the alleged violation potentially affected the outcome of the proceedings. *Cano-Merida v. INS*, 311 F.3d 960, 965 (9th Cir. 2002).

## A.  Canadian Record of Conviction

**[10]** Uppal contends that the documents concerning his § 268 conviction were not properly authenticated under 8 C.F.R. § 287.6(d), which states that official records issued by a Canadian government entity must be "evidenced by a certified copy of the original record attested by the official having legal custody of the record or by an authorized deputy." We have held that § 287.6 "provides one, but not the exclusive, method for establishing a sufficient basis for admission of a [document] in a [removal] proceeding." *Iran v. INS*, 656 F.2d 469, 472 n.8 (9th Cir. 1981). Nevertheless, the method of authentication used "must, at a minimum, satisfy due process," *id.* at 472, and Uppal contends that his due process rights were denied here.

Uppal has never disputed the fact of his conviction; nor has he ever contended that the documents contain false or erroneous information. He simply argues that the documents were not authenticated in accordance with the requirements of § 287.6(d), that he was denied an opportunity to cross-examine government witnesses about the documents, and that these errors constitute a due process violation.

**[11]** We disagree. Assuming Uppal is correct that the Canadian records were improperly certified and that he should

have been given the opportunity to cross-examine government witnesses relevant to those documents, Uppal's due process argument fails because he has not shown that he was prejudiced by the asserted errors. On the contrary, Uppal concedes that "[i]t is undoubtedly true that the IJ would have rendered the same decision, finding the Petitioner removable as charged," if the IJ had held a hearing on the disputed documents and allowed Uppal the chance to cross-examine the government's witnesses before deciding whether to admit them. Because Uppal has not made any argument that his proceeding might have gone differently had he been able to cross-examine the government's witnesses, *see Cano-Merida*, 311 F.3d at 965, we deny his due process challenge on this point.

## B. Other Evidence of Immigration Fraud

Next, Uppal contends he was denied due process of law because he was denied the opportunity to challenge the government's evidence concerning the purported immigration fraud. The IJ found Uppal removable on two alternate grounds: 1) for a conviction of a crime involving moral turpitude, and 2) for committing immigration fraud. The BIA conducted a de novo review of the moral turpitude issue, and found that Uppal was indeed removable on this ground. The BIA specifically declined to express an opinion on the charge of immigration fraud.

[12] Our review "is limited to the BIA's decision." *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006). Because the BIA refused to affirm the IJ's findings on the immigration fraud issue, and did not rely on any evidence concerning the purported fraud in upholding the order of removal against Uppal, Uppal did not suffer any prejudice by the denial of the opportunity to challenge the government's evidence of the alleged fraud.

In sum, Uppal has failed to demonstrate that he was prejudiced by either of the alleged due process violations.

### III. Did the BIA abuse its discretion in failing to address Uppal's request for a remand?

**[13]** Finally, Uppal contends that the BIA abused its discretion by failing to address his motion to remand the proceedings to the IJ. He argues that because he styled his appellate brief as a "Brief In Support of Appeal From Decision of Immigration Judge/Motion To Remand," the BIA erred by failing to specifically rule on his request for remand.

Uppal's claim is frivolous. He admits that the substance of his motion was synonymous with that of his appeal: in his motion, he argued that the IJ erred in determining that a § 268 offense was a categorical crime involving moral turpitude, and asked for remand for further review of the removability issue. Precisely the same issue and remedy were at stake in the appeal itself. The BIA thoroughly addressed this issue, and provided a clear ruling. In support of his claim, Uppal cites *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005), which holds that the BIA must provide a reasoned basis for its decision, in order to facilitate this court's review of the issue. The BIA has satisfied this standard.

Uppal's claim that the BIA failed to rule on or address his motion for remand borders on disingenuous. While the BIA did not deny his motion for remand in any particular words, the order thoroughly addressed the moral turpitude issue, provided a reasoned analysis rejecting Uppal's claim, and dismissed his appeal. Accordingly, there was no abuse of discretion.

The petition for review is DENIED.

___

BERZON, Circuit Judge, concurring in part and dissenting in part:

I cannot agree with Part I of the majority opinion, in which the majority defers to the BIA's holding that a violation of

Canada Criminal Code § 268 is categorically a crime involving moral turpitude (CIMT). I would conclude that it is not and remand to the agency to decide whether, under the modified categorical approach, Uppal's conviction qualifies as a CIMT. I therefore dissent from the majority's holding to the contrary.

As we recently explained in *Marmolejo-Campos v. Holder*, 558 F.3d 903, 907 (9th Cir. 2009) (en banc), the determination that a conviction under a criminal statute is categorically a CIMT involves two steps, to which different standards of review apply. First, the BIA must identify the elements of the statute necessary to secure a conviction. Because "[t]he BIA has no special expertise by virtue of its statutory responsibilities in construing state or federal criminal statutes," we review its conclusion in that regard *de novo*. *Id.* at 907. Second, once it identifies the elements of the statute, the BIA must compare those elements to the generic definition of a crime involving moral turpitude and decide whether they meet the definition. *Id.* at 908; *see also Morales-Garcia v. Holder*, 567 F.3d 1058, 1064 (9th Cir. 2009). Because the BIA does have expertise in making this determination, we defer to its conclusion if warranted, following the *Chevron* framework if the decision is a published decision (or an unpublished decision directly controlled by a published decision interpreting the same statute), and following the *Skidmore* framework if the decision is unpublished (and not directly controlled by any published decision interpreting the same statute). *See Marmolejo-Campos*, 558 F.3d at 909-11; *see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

### 1. The BIA incorrectly identified the elements of § 268

I turn to the first step of the inquiry: identifying the elements of Canada Criminal Code § 268 (aggravated assault). As the majority notes, the mens rea required for a conviction under § 268 is the same as the mens rea required for simple

assault: (1) The force must be intentionally applied; and (2) the force must be applied without the victim's consent, with the perpetrator "intentionally or recklessly [disregarding the lack of consent] or being wil[l]fully blind to the fact that the victim does not consent." *R. v. Williams*, [2003] 2 S.C.R. 134, ¶ 22 (Can.). In addition to the mens rea requirement, a conviction for aggravated assault requires that the "risk of bodily harm" resulting from the application of force must be "objective[ly] fores[eeable.]" *Id.* Finally, to establish aggravated assault, the application of force must actually result in "wound[ing], maim[ing], disfigur[ing], or endanger[ing] the life of" the victim. Can. Crim. Code, R.S.C., ch. C-46, s. 268 (1985).

The majority, quoting this statutory language, jumps to the conclusion that "§ 268's actus reus requires 'infliction of significant *injury*.' " Maj. Op. at 10857 (emphasis added and brackets omitted). Not so. The statute requires *either* significant injury *or* the "endanger[ment] of the life of" the victim, and so can be satisfied *even if no actual injury occurs*.

Were this fact not clear from the language of the statute itself, Canadian case law interpreting § 268 leaves no doubt. As the Canadian Supreme Court explained: "There is no prerequisite that any harm must actually have resulted. This first requirement of § 268(1) is satisfied by the significant risk to the li[fe] of the [victim] occasioned by the [application of force]." *R. v. Cuerrier*, [1998] 2 S.C.R. 371, ¶ 95 (Can.).

Although it is difficult to tell for sure from the BIA's terse analysis whether the BIA correctly identified the elements of § 268, the only reasonable conclusion is that it did not. The BIA's decision quotes the statute's actus reus language — "wound[ing], maim[ing], disfigur[ing], or endanger[ing] the life of the complainant" — correctly, but it then goes on to paraphrase the statute as requiring "willfulness of the action which inflicts *the serious injury*" (emphasis added), suggesting that it has overlooked the endangerment alternative. I

therefore conclude that the BIA misapprehended the elements required for a conviction under § 268. Because the BIA failed to identify the elements of § 268 correctly, its CIMT analysis — in which it compares the elements it has identified to the generic definition of moral turpitude — is misdirected and so merits no deference from this Court. *See Morales-Garcia*, 567 F.3d at 1066 n.4. Given the BIA's error, we should remand to the BIA to consider whether, on a proper understanding of the elements of the crime, a Canadian aggravated assault conviction is categorically a CIMT.

## 2. *The BIA's reasoning does not merit deference*

There is a second problem with the majority's CIMT ruling: Even if the BIA had correctly identified the elements of § 268, I would conclude that the second step of its CIMT analysis does not warrant deference, because it is neither thoroughly reasoned nor consistent with prior BIA or Ninth Circuit case law. *See Skidmore*, 323 U.S. at 140 (explaining that the measure of deference afforded to the agency varies "depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control"). In addition, there is a head-on conflict between the majority's analysis and this Court's recent decision in *Morales-Garcia v. Holder*, 567 F.3d 1058, as well as a general conflict with the BIA's own case law.

As the majority correctly notes, a conviction for aggravated assault under § 268 does not require that the perpetrator specifically intended to inflict serious physical injury or intended to inflict any injury at all. *See R. v. Godin*, [1994] 2 S.C.R. 484, ¶ 2 (Can.) ("It is not necessary that there be an intent to wound or maim or disfigure. The section pertains to an assault that has the *consequences* of wounding, maiming or disfiguring." (emphasis added)); *R. v. L.*, [1992] 59 O.A.C. 130, ¶¶ 8-10 (Ont. Ct. App.) ("[T]he essential intent required for an

assault . . . remains the same for all forms of assault, including aggravated assault. Parliament . . . never intended that, on an indictment charging 'aggravated assault,' the prosecution would be required to prove that the accused intended to wound, maim or disfigure the complainant or endanger his life. . . . Aggravated assault is . . . a crime of general intent." (internal quotation marks and citations omitted)) (interpreting the former § 245.2, which is identical to the current § 268).

It is settled law that simple assault and battery convictions are not categorically CIMT convictions. That is so because the required mens rea for simple assault or battery is usually the intent to touch another offensively — not exactly what one would call an "evil" intent, which is typically required for a CIMT.[1]

---

[1]*See Matter of Solon*, 24 I. & N. Dec. 239, 241 (BIA 2007) ("Offenses characterized as 'simple assaults' are generally not considered to be crimes involving moral turpitude. This is so because they require general intent only and may be committed without the evil intent, depraved or vicious motive, or corrupt mind associated with moral turpitude." (internal citation omitted)); *Matter of B-*, 5 I. & N. Dec. 538, 540-41 (BIA 1953) (holding a simple assault committed "knowingly" upon a prison guard involved no evil intent and so was not a CIMT); *Matter of Fualaau*, 21 I. & N. Dec. 475, 477 (BIA 1996) (defining a CIMT as " 'an act which is per se morally reprehensible and intrinsically wrong, or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude.' "(quoting *Matter of Franklin*, 20 I. & N. Dec. 867, 868 (BIA 1994))).

*See also, generally*, *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1068 (9th Cir. 2007) (en banc) (defining non-fraud CIMTs as involving conduct that is "*inherently* base, vile, or depraved" and "contrary to the [accepted] private and social duties man owes to his fellow men or to society in general" (emphasis added)); *Fernandez-Ruiz v. Gonzales*, 468 F.3d 1159, 1165-66 (9th Cir. 2006) (discussing the requirement that a crime involve a showing of " 'willfulness' or 'evil intent' " to be classified as a CIMT, as opposed to "general intent" or "reckless[ness]"); *Notash v. Gonzales*, 427 F.3d 693, 698 (9th Cir. 2005) (holding that an act done deliberately and with knowledge does not necessarily involve the "evil intent" required for CIMT purposes); *Goldeshtein v. INS*, 8 F.3d 645, 648 (9th Cir. 1993) (rejecting the argument that "evil intent exists if a conviction requires proof that a defendant did a forbidden act 'willfully,' " where "willfully" was defined to mean "deliberately and with knowledge").

It is true, as the BIA states, that the presence of "some aggravating dimension" has, as to certain statutes, been held sufficient to increase the culpability of an assault or battery, so making the offense categorically a CIMT. Those statutes, however, involved either the use of a deadly weapon, *see Matter of Medina*, 15 I. & N. Dec. 611 (BIA 1976), or a victim who has a special status or trust relationship vis à vis the perpetrator, such as a domestic partner or spouse, *see In re Tran*, 21 I. & N. Dec. at 291, a child, *Guerrero de Nodahl v. INS*, 407 F.2d 1405 (9th Cir. 1969), or a peace officer, *Matter of Danesh*, 19 I. & N. Dec. 669 (BIA 1988). As these categories of cases illustrate, to rise to the level of moral turpitude, a crime must involve a particular *type* of aggravating factor, one that says something about the turpitude or blameworthiness inherent in the action.

The only BIA case of which I am aware in which an assault offense was found to be categorically a CIMT despite the absence of a special protected status or trust relationship or the use of a deadly weapon is *Matter of Franklin*, 20 I. & N. Dec. 867 (BIA 1994). In *Franklin*, the BIA held that an involuntary manslaughter statute was categorically a CIMT because the statute had as elements both extreme recklessness *and the death of another person* — a result serious enough to raise the offense to a CIMT even without a showing of specific evil intent. *Franklin*, 20 I. & N. Dec. 867.[2]

Consistently with these general trends in the BIA's case law, this Court recently reversed the BIA and held that California Penal Code § 273.5, which penalizes the "willful[ ] inflict[ion] upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father

---

[2]In *Matter of Fualaau*, the BIA hinted that something short of death — perhaps "serious bodily injury" — might be sufficient. *See Matter of Fualaau*, 21 I. & N. Dec. at 477 (indicating that reckless assault was *not* categorically a CIMT because it did not require "serious bodily injury"). As far as I know, there is no case so holding.

of his or her child, corporal injury resulting in a traumatic condition," is not categorically a CIMT. *See Morales-Garcia*, 567 F.3d at 1060, 1063. The Court so held because the statute did not require any special trust relationship — the victim could be merely a "former cohabitant"; it also observed that the resulting harm, a "traumatic condition," could encompass "a wound or external or internal injury [even] . . . of a minor . . . nature." *Id.* at 1063.

I see no way to square the majority opinion in this case with *Morales-Garcia*. As in *Morales-Garcia*, the statute at issue in Uppal's case requires no special trust relationship between the victim and the perpetrator. And it does not require that serious physical injury, much less death, result. Under § 268, even if the "endanger[ing]" language is disregarded, "wounding" is enough, without any requirement that the wound be other than minor; a finger cut requiring only a band-aid would suffice.

With the exception of *Franklin*, where the unintended result was death, and the special factor cases, the BIA's case law uniformly indicates that a statute cannot be categorically a CIMT if the mental state element does not require an intent to injure. For example, in *In re Muceros*, A42-998-610 (BIA May 11, 2000) (index decision),[3] the BIA held that a conviction under California Penal Code § 243(d) for "battery . . . [in which] serious injury is inflicted" is not categorically a CIMT, because

---

[3]All decisions designated to serve as precedent are published in bound volumes of the reporter entitled *Administrative Decisions Under the Immigration & Nationality Laws of the United States* (or "I. & N. Dec."). Separately, the Executive Office of Immigration Review periodically compiles certain unpublished decisions as so-called "indexed decisions," which are meant to serve as useful but non-binding guidance for EOIR staff. *See* BIA Prac. Man., Ch. 1.4(d) (rev. July 30, 2004), *available at* http://www.usdoj.gov/eoir/vll/qapracmanual/pracmanual/chap1.pdf. Indexed decisions are, nevertheless, non-precedential. *Id.*

the level of intent involved only extends to touching the victim. No evil intent is required. The victims are not a specially protected class of persons or those who have a special relationship to the . . . . We recognize the argument that the element of "serious bodily injury" presents an aggravating factor which elevates the respondent's crime to one involving moral turpitude. [But] [w]e adopt the reasoning of the California Courts in this regard, which have held that "[s]ince section 243 does not require an intention to do any act which would be judged to be evil by generally accepted community standards of morality, battery is not a crime of moral turpitude [for impeachment purposes] even though it may unintentionally result in serious bodily injury."

*Id.* at *5-*6 (internal citation omitted). Similarly, in *Matter of Solon*, the BIA gave dispositive significance to the distinction between general and specific intent in holding that a New York conviction for assault in the third degree is categorically a CIMT:

[S]ection 120.00(1) of the revised New York Penal Law . . . provides that a person is guilty of assault in the third degree when, "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person." . . . [The statute] requires "intent to cause physical injury." . . . Thus, the statute under which the respondent was convicted requires the specific intent to cause physical injury, as opposed to the general intent associated with simple assault. Therefore, the inclusion of the specific intent element distinguishes third-degree assault under section 120.00(1) of the New York Penal Law from the general-intent simple assaults, which are not considered to involve moral turpitude.

24 I. & N. Dec. at 243-44 (internal citations omitted).

This Court, too, has taken note of the distinction between general and specific intent in the assault and battery contexts. *See Grageda v. INS*, 12 F.3d 919, 922 (9th Cir. 1993) (holding that "when a person willfully beats his or her spouse severely enough to cause 'a traumatic condition,' he or she has committed an act of baseness or depravity contrary to accepted moral standards [and has categorically committed a crime involving moral turpitude]" and noting that this "conclusion follows from *Guerrero de Nodahl*[, 407 F.2d at 1406,] because the injurious act under section 273.5(a) must be willful, meaning that the person intended to cause the harm"). *Cf. Morales-Garcia*, 567 F.3d at 1066 n.5 (noting that "*Grageda* interpreted the statute to require that the defendant 'intended to cause the harm,' although later California cases appear to require only the *general* intent to commit the act that results in injury[ ]" (internal citation omitted) and expressing no opinion on whether general intent would be sufficient).

As a result, under the BIA's case law and our own, an assault statute *not* involving a specific intent to injure or a special trust relationship, and *not* requiring that the assault cause death, cannot qualify as a categorical CIMT.

## Conclusion

As I explain in the first part of this separate opinion, we should not be deciding the CIMT issue on the merits at all, because the BIA misconstrued the statutory elements and so did not itself decide the hard CIMT issue actually raised. I would therefore remand to the agency to do so. Alternatively, I would simply grant the petition and remand for application of the modified categorical approach.

For these reasons, I respectfully dissent in part.